*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0188P (6th Cir.)
File Name: 01a0188p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

ARMCO EMPLOYEES
INDEPENDENT FEDERATION,
    *Plaintiff-Appellant,*

v.                                  No. 00-3328

AK STEEL CORPORATION,
    *Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 99-00119—Herman J. Weber, District Judge.

Argued: March 13, 2001

Decided and Filed: June 6, 2001

Before: COLE and GILMAN, Circuit Judges; BORMAN,
District Judge.

———————

**COUNSEL**

**ARGUED:** Robert H. Mitchell, MANLEY, BURKE &
LIPTON, Cincinnati, Ohio, for Appellant. George E. Yund,
FROST & JACOBS, Cincinnati, Ohio, for Appellee.

---

*The Honorable Paul D. Borman, United States District Judge for the
Eastern District of Michigan, sitting by designation.

1

**ON BRIEF:** Robert H. Mitchell, MANLEY, BURKE & LIPTON, Cincinnati, Ohio, for Appellant. George E. Yund, Katherine C. Morgan, FROST & JACOBS, Cincinnati, Ohio, for Appellee.

————————

## OPINION

————————

R. GUY COLE, JR., Circuit Judge. Plaintiff-Appellant Armco Employees Independent Federation, Inc. ("AEIF"), a labor union, filed the present lawsuit to compel the employer, Defendant-Appellee AK Steel Corporation ("AK Steel"), to arbitrate two separate grievances pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA"). AEIF filed the two grievances on behalf of employee members; AK Steel's refusal to submit those grievances to arbitration resulted in the present litigation. Grievance No. 98-E-1123 contests employee D.J. Johnson's discharge, which AK Steel maintains is not substantively arbitrable because it was not filed in accordance with the time requirements of the collective bargaining agreement ("CBA"). Grievance No. 95-E-731 contests AK Steel's use of outside contractor employees without giving the union proper notification. Although the latter grievance was initially submitted to arbitration, AK Steel walked out of arbitration after AEIF sought to introduce evidence of CBA violations that AK Steel alleges were not within the scope of the grievance. On cross-motions for summary judgment, the district court entered summary judgment against AEIF, finding that the grievances were not substantively arbitrable. For the following reasons, we **REVERSE** the judgment of the district court and **REMAND** with instructions to enter an order compelling arbitration of the grievances and to consider AEIF's request for attorneys' fees.

## I. BACKGROUND

AEIF is a labor union representing a bargaining unit of production and maintenance workers at AK Steel Middletown

Works, formerly Armco Steel Co., L.P. Middletown Works, in Middletown, Ohio. AK Steel primarily produces flat-rolled carbon and stainless steel for use in automotive and appliance manufacturing. At the time the dispute arose, AK Steel and AEIF were parties to a CBA, effective from March 1, 1994, through February 29, 2000. Under the general arbitration clause of the CBA, all union grievances were required to be submitted to arbitration. The following definition of "grievance," as set forth in the CBA, limited the subject matter over which the parties agreed to arbitrate:

> A grievance, within the meaning of the grievance procedure, is restricted to a request or complaint not resolved as the result of the oral discussions required in Step I or a request or complaint appropriate for filing directly in Step II. It shall consist only of disputes about wages, hours of work, and working conditions, as provided in this Agreement; about the interpretation and application of this Agreement; and about an alleged violation of this Agreement. If any question arises as to whether said dispute is or is not a proper grievance within the meaning of these provisions, the question may be reserved throughout the grievance procedure and determined, if necessary, by the arbitrator.

CBA Art. VII § B(1).

D.J. Johnson was discharged early in 1995 for being in the Middletown Works plant under the influence of an intoxicant. In April 1995, he signed a Last Chance Agreement that allowed him to return to work, but required him to submit to random drug testing. In November 1997, AK Steel alleged that Johnson failed to submit to a drug test after a Senior Industrial Relations Representative ordered him to do so. AK Steel suspended Johnson on November 24 for violation of a last chance agreement and failure to follow a company directive. A Step I appeal hearing took place on December 3, 1997, and confirmed that AK Steel would terminate Johnson. AEIF filed Grievance 97-E-859 on December 15, 1997, for the alleged violation by AK Steel of CBA Art. IX § A(1),

which provides that the company may not discharge an employee without just cause and due consideration. The grievance proceeded to Step II, an intermediate step to arbitration, and on February 11, 1998, the discharge was upheld again. In the meantime, AK Steel reviewed Johnson's employment records and concluded that he had lied on his application. AK Steel sent a letter to Johnson on February 9, 1998, listing falsification of employment records as an additional reason for his discharge. The arbitration hearing was conducted on May 11, 1998, and in October 1998, the arbitrator issued his opinion and award sustaining the grievance and directing AK Steel to reinstate Johnson. AK Steel, however, refused to allow Johnson to return to work, contending that the arbitrator had not considered the falsification of employment records as set forth in the company's February 9 letter and that this, therefore, remained a valid reason for discharge. Subsequently, AEIF sought to reinvoke the jurisdiction of the arbitrator for resolution of this issue. In response, the arbitrator sent a letter on December 8, 1998, which stated:

> I did not deem the February 1998 charge [of falsification of employment records] to be central to the resolution of the December 11, 1997 grievance which specifically related to Grievant's December 5, 1997 termination for allegedly failing to comply with a directive to submit to a drug test. In sustaining Grievance 97-E-859 and retaining jurisdiction "over any remedy-related issue(s)", it was not my intention to extend my jurisdiction to the issue of whether Grievant was entitled to be made whole beyond the date of his February 1998 discharge, which would necessarily involve a resolution of whether he was discharged without just cause and due consideration for his alleged falsification of his employment application years earlier. On the other hand, though, my decision to sustain the discharge was not intended as a ruling precluding the Union from challenging that discharge. The Union did not know that the procedural and/or substantive issues relating to Grievant's February 1998 termination would not be encompassed in my resolution

review. Therefore, we decline to address the merits of such a claim at the present time.

### III. CONCLUSION

Accordingly, we **REVERSE** the judgment of the district court and **REMAND** with instructions to enter an order compelling arbitration of the grievances and to consider AEIF's request for attorneys' fees in light of this opinion.

grievance is AK Steel's power to contract work out to non-union employees. The limitation of AK Steel's power to contract out is set forth in Article XXIII of the CBA. Because the arbitration clause, CBA Art. VII § B(1), provides that disputes over alleged breaches of the CBA are properly submitted to arbitration, this matter is substantively arbitrable.

AK Steel argues that we should determine which issues the arbitrator should consider. We believe that we would be exceeding our limited authority under the *Steelworkers Trilogy* if we did so. Determining the specific *issues* that may be considered in arbitration is altogether different from determining the arbitrability of broad *subject matter*. Contracting-out is substantively arbitrable according to the CBA. Whether any particular issue is outside the scope of the grievance is a procedural matter to be determined in the arbitration. *See Wiley*, 376 U.S. at 556-58.

AK Steel argues that *Champion International Corp. v. United Paperworkers International Union*, 779 F.2d 328 (6th Cir. 1985), addressed the issue of the arbitrability of matters outside the scope of the grievance. This is plainly an incorrect reading of *Champion*. The *Champion* panel reviewed an arbitration award and found that the arbitrator overstepped his bounds and considered issues not before him. The issue in that case was not "arbitrability" at all, but rather the scope of the court's power to modify an arbitration award. That the arbitrator should decide which issues are properly before him is not disputed by *Champion*, which explicitly states that it is an "arbitrator's threshold decision that the parties have indeed submitted a particular issue for arbitration." *Id.* at 335. Only after the arbitrator issues an award based on matters not properly before it does *Champion* become relevant. If AK Steel wants to dispute the arbitration award based on issues allegedly outside the scope of the grievance, then the federal courts have the power to review that decision. *Champion*, 779 F.2d at 334-35 (citing *Steelworkers II*, 363 U.S. at 582). We cannot resolve the matter until the arbitration has produced a decision for us to

of the December 1997 grievance. That knowledge will occur upon the Union receiving a copy of this letter from our office. Whether a grievance filed shortly after this letter would be a timely protest to the February 1998 discharge, under these unique circumstances, is an issue over which I do not have jurisdiction.

J.A. 439-40.

As a result, AEIF immediately filed Grievance No. 98-E-1123, this time disputing Johnson's dismissal based on the charge of falsification of employment records. AK Steel refused to process the grievance, claiming that it was untimely under the CBA, which specifies that: "Grievances filed directly in Step II must be filed within thirty days of the inception or occurrence of the event upon which the request or complaint is based." CBA Art. VII § E. As a result, no hearing on this grievance was ever held.

On November 14, 1995, AEIF filed Grievance No. 95-E-731, which read: "The Company is using contractor employees in the plant to transfer scrap from railroad cars to trucks. This work has historically been performed by Bargaining Unit Employees, crane operators, in this case. The Union did not receive proper notification." At the arbitration hearing on August 27, 1998, AK Steel objected after AEIF's opening statement, challenging the scope of the issue properly before the arbitrator. AEIF argued that the scope of the grievance included all manner of scrap preparation work performed by bargaining crane unit operators whereas AK Steel contended that the scope was limited to scrap transport from train to trucks. After hearing testimony indicating that both parties understood that the issue was broadly construed, the arbitrator denied AK Steel's request to limit the scope of the evidence presented to the narrow issue stated on the face of the grievance. AK Steel refused to participate further in the hearing if the broader issue was considered and AEIF refused to participate if only the narrow issue was considered.

AEIF brought the present claim on February 19, 1999, in the United States District Court for the Southern District of Ohio, seeking a court order requiring AK Steel to process and arbitrate both grievances, and an award of attorneys' fees. AK Steel argues that, because one grievance was untimely and the other outside the scope of the notice filed for arbitration, the matters are not within the CBA arbitration provision and therefore are not substantively arbitrable. Pursuant to an agreement with the district court, the parties filed cross-motions for summary judgment. On February 15, 2000, the district court entered summary judgment against AEIF. Because the district court found for AK Steel, it did not make findings on the issue of attorneys' fees. This timely appeal follows.[1]

## II.  DISCUSSION

### A.  ARBITRABILITY OF TIMELINESS

Our role as a federal court in labor disputes has been settled since 1960 when the Supreme Court decided the *Steelworkers Trilogy*. *United Steelworkers v. Am. Mfg. Co*, 363 U.S. 564 (1960) (*Steelworkers I*); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960) (*Steelworkers II*); *United Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593 (1960) (*Steelworkers III*). We are limited to determining substantive arbitrability only -- that is, which subjects the parties have agreed to arbitrate, according to the terms of their CBA. *Steelworkers II*, 363 U.S. at 582-83. Settling disputes under a collective bargaining agreement is exclusively within the purview of the arbitrator, a policy designed to minimize labor tensions and the threat of strikes. *Id.* Therefore, we have jurisdiction only to decide which subjects should be arbitrated.

We are presented with the question of whether AK Steel is required to process and arbitrate an untimely grievance. AEIF

---

[1] AEIF also petitioned this court for hearing en banc on April 25, 2000, which we denied by order filed on May 15, 2000.

arbitration. *Moog*, 167 F.3d at 874-75 (distinguishing *Oil Workers' Int'l Union, Local 4-447 v. Chevron Chem. Co.*, 815 F.2d 338 (5th Cir. 1987), because the collective bargaining agreement in that case provided that an untimely grievance would be "considered abandoned").

The language of the CBA between AK Steel and AEIG reads: "[I]n the event appeals are not made to the next higher Step in the grievance procedure within the time limitations specified, . . . the request, complaint or grievance shall be considered settled and no further action may be taken on it." CBA Art. VII § E(4). This language does not unambiguously prevent an untimely grievance from going to arbitration. The language "no further action may be taken on it" in the CBA is similar to the "considered abandoned" language from the *Chevron* case that *Moog* specifically distinguishes. *Moog*, 852 F.2d at 874-75 (citing *Chevron*, 815 F.2d 338). Further, this clause does not specifically mention arbitrability at all or give any indication that such questions are not arbitrable. To the contrary, CBA Art. VII § B(1), the general arbitration clause, provides that questions of arbitrability are themselves to be submitted to arbitration, which we believe was designed to address the precise question before us. Without an "express provision" in the CBA, we do not have the kind of "forceful evidence" that would counteract a policy of presumptively submitting labor disputes to arbitration. *Steelworkers II*, 363 U.S. at 584-85. Accordingly, *Wiley*'s directive to arbitrate procedural questions applies in this case. We find that AK Steel is required to process and arbitrate Grievance No. 98-E-1123, and must submit the question of timeliness to the arbitrator.

### B.  ARBITRABILITY OF THE SCOPE OF THE GRIEVANCE

The second issue before us is whether the contracting-out grievance is substantively arbitrable. To reiterate, our role is confined to determining whether the CBA provides for arbitration of the subject matter of the grievance. *Steelworkers II*, 363 U.S. at 582-83. The subject matter of the

substantively arbitrable. *Id.* at 954, 956 ("[A]ll parties shall be barred from ever submitting [an untimely] grievance, dispute or disagreement to arbitration.").[2]

*Moog*, however, does not control in the present case because the CBA does not explicitly provide that an untimely grievance is substantively precluded from arbitration; therefore, it does not fit within the *Moog* exception. *Moog* makes clear that unless there is no other possible interpretation of the collective bargaining agreement but that an untimely grievance is not to go to arbitration, then the matter must be submitted to arbitration. *Moog* reiterates a portion of the following oft-quoted language of the *Steelworkers II* case:

> An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage. . . . In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail. . . ."

*Steelworkers II*, 363 U.S. at 582-83, 584-85; *accord Raceway Park*, 167 F.3d at 958-59; *Moog*, 852 F.2d at 873-74. Therefore, collective bargaining agreement language setting forth time prerequisites to arbitration that is any less specific than "the union shall be 'conclusively presumed to have accepted' the company's position 'and said grievance *shall not* thereafter be *arbitrable*'" should be submitted to

---

[2]Under the heading of "*Moog*'s Misfortune," the panel offers a thoughtful critique of *Moog*, unraveling what it considers to be faulty analysis. *See id.* at 961-63. As a result, AEIF urges us to reverse *Moog*. However, regardless of what we may think of the *Moog* exception to *Wiley*, this panel cannot overturn a published decision of a previous panel of this court. 6th Cir. R. 206(c); *Craft v. United States*, 233 F.3d 358, 369 (6th Cir. 2000) (discussing law-of-the-circuit doctrine).

argues that timeliness is a procedural matter to be determined during arbitration of an otherwise substantively arbitrable grievance. AK Steel maintains that the requirement to arbitrate is not only limited by the definition of a grievance, but also by the procedural requirements set forth in the CBA. The district court found that, because the grievance was untimely, the union was barred from demanding arbitration.

If a court decides that the subject matter is properly arbitrable, then potential procedural bars to arbitration are matters for the arbitration itself. *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 556-58 (1964). Thus, courts determine only *substantive* arbitrability while arbitrators determine *procedural* arbitrability. *Wiley* specifically held that the question of whether a grievance is time-barred under a collective bargaining agreement is to be determined in arbitration itself. *See id.* at 556. Accordingly, AK Steel must submit the grievance to arbitration for a determination of whether the grievance was timely.

AK Steel makes essentially two arguments in support of its position. First, it contends that substantive arbitrability and procedural arbitrability are no longer distinguishable in light of the Supreme Court's decision in *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643 (1986). Second, AK Steel argues that even assuming such a distinction persists, our decisions in *General Drivers, Local Union 89 v. Moog Louisville Warehouse*, 852 F.2d 871 (6th Cir. 1988), and *Raceway Park, Inc. v. Local 47, Service Employees International Union*, 167 F.3d 953 (6th Cir. 1999), suggest that timeliness is a question of substantive arbitrability, properly presented to a federal court and not to an arbitrator.

### 1. *AT&T Technologies*

AK Steel relies heavily upon *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643 (1986), arguing that it erases the distinction between substantive and procedural arbitrability announced in *Wiley*. In *AT&T*, the Court held, "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to

arbitrate is to be decided by the court, not the arbitrator." *Id.* at 649. AK Steel contends that this language mandates that federal courts determine both substantive and procedural arbitrability. This is an unfaithful reading of *AT&T*. This case is a reaffirmation of the *Steelworkers* principles that arbitration is the preferred method of settling labor disputes and that a court's only role should be determining whether disputes over the interpretation of the collective bargaining agreement are subject to the arbitration provision. *Id.* at 651-52. Courts have no authority "to construe collective-bargaining contracts and arbitration clauses, or to consider any other evidence that might unmistakably demonstrate that a particular grievance was not to be subject to arbitration." *Id.* at 651-52. That the power of federal courts is limited to interpreting the substantive scope of the arbitration clause is undisputed. *AT&T* merely clarifies that the responsibility for this decision rests squarely on our shoulders and that we may not delegate it to the arbitrator. *See id.*

*AT&T* does not mention the distinction between substantive and procedural arbitrability. The dispute in *AT&T* arose over whether the defendant-company was required to arbitrate a grievance concerning the propriety of massive lay-offs. As this Court has noted previously, "Whether disputes over layoffs should be arbitrated is clearly a matter of substantive arbitrability of the very sort which the Steelworkers Trilogy requires the courts to determine." *Raceway Park, Inc. v. Local 47, Serv. Employees Int'l Union*, 167 F.3d 953, 961 (6th Cir. 1999). *AT&T* did not erode the *Wiley* distinction between substantive and procedural arbitrability, as it did not confront that issue. *See id.* ("*AT&T Technologies* in no way whatsoever alters the import of the Supreme Court's prior decision in *John Wiley & Sons*."). The *Wiley* distinction is still valid and continues to be recognized by other circuits post-*AT&T*. *See, e.g., Bell Atlantic-Pennsylvania, Inc. v. Communications Workers, Local 13000*, 164 F.3d 197, 200-02 (3d Cir. 1999); *Local 285, Serv. Employees Int'l Union v. Nonotuck Res. Assocs., Inc.*, 64 F.3d 735, 739 (1st Cir. 1995); *Smith Barney Shearson, Inc. v. Boone*, 47 F.3d 750, 753-54 (5th Cir. 1995); *Local Union No. 637, Int'l Bhd. of Elec.*

*Workers v. Davis H. Elliot Co.*, 13 F.3d 129, 131 (4th Cir. 1993).

### 2. *Moog* and *Raceway Park*

AK Steel argues that the Sixth Circuit cases *General Drivers, Local Union 89 v. Moog Louisville Warehouse*, 852 F.2d 871 (6th Cir. 1988), and *Raceway Park, Inc. v. Local 47, Service Employees International Union*, 167 F.3d 953 (6th Cir. 1999), narrow the holding of *Wiley*. *Moog* held that a grievance was not properly arbitrable because the union had not submitted its grievance within the time frame dictated in the collective bargaining agreement. *Id.* at 873. *Moog* creates a narrowly crafted exception to *Wiley*, and is virtually limited to its facts. *See Moog*, 167 F.3d at 874-75. The language of the collective bargaining agreement in *Moog* provided: "[I]f the Union fails to notify the Company . . . within 15 calendar days after the Company gives its answer [to the grievance] . . . , then the Union shall be conclusively presumed to have accepted the Company's answer thereto and said grievance *shall not thereafter be arbitrable*." *Id.* at 873 (emphasis added). *Moog* concluded that this language indicated *substantive* not *procedural* arbitrability, and therefore the *Wiley* doctrine did not apply. *See id.* at 875 ("It will not do to characterize something as 'procedural' and conclude automatically that 'procedural' matters are for the arbitrator *if the parties have specified otherwise* in the arbitration section itself."). This language, the panel concluded, clearly prohibits submitting untimely grievances to arbitration.

Although *Raceway Park* is superficially one of *Moog*'s progeny, the *Raceway* panel forthrightly states in the first paragraph of the opinion that *Moog* is "a decision with which we disagree" and follows it "despite strong misgivings." *Raceway Park*, 167 F.3d at 954. In the rest of the opinion, the panel staunchly objects to *Moog*, considering it to be a "grave departure" from *Wiley* as well as the basic *Steelworkers* rules. *Id.* at 954, 956-61. Nevertheless, *Raceway Park* found that collective bargaining agreement language similar to that in *Moog* demanded that a time-barred grievance was not