*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0402p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STEELWORKERS OF AMERICA,
AFL-CIO-CLC,

       *Plaintiff-Appellant,*

  *v.*

SAINT GOBAIN CERAMICS & PLASTICS, INC.,

       *Defendant-Appellee.*

No. 05-6851

---

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 04-00603—Charles R. Simpson III, District Judge.

Argued: September 20, 2006

Decided and Filed: October 30, 2006

Before: GUY, SUTTON, and ALARCÓN, Circuit Judges.[*]

---

**COUNSEL**

**ARGUED:** David R. Jury, UNITED STEELWORKERS OF AMERICA, Pittsburgh, Pennsylvania, for Appellant. John W. Woodard, Jr., WYATT, TARRANT & COMBS, LLP, Louisville, Kentucky, for Appellee. **ON BRIEF:** Daniel M. Kovalik, Paul L. Edenfield, UNITED STEELWORKERS OF AMERICA, Pittsburgh, Pennsylvania, for Appellant. John W. Woodard, Jr., Edwin S. Hopson, WYATT, TARRANT & COMBS, LLP, Louisville, Kentucky, for Appellee.

---

**OPINION**

---

  SUTTON, Circuit Judge. *General Drivers, Warehousemen and Helpers, Local Union 89 v. Moog Louisville Warehouse*, 852 F.2d 871 (6th Cir. 1988), held that the application of an express time-limitations bar in a collective bargaining agreement prohibiting the arbitration of untimely grievance appeals presents a substantive question of arbitrability for a court to decide, as opposed to a procedural question for an arbitrator to decide. Consistent with that decision, the district court in this case granted the company's motion to preclude arbitration as a matter of law based on the late filing of a grievance appeal. Like two prior panels of this court, we have serious misgivings about

---

[*] The Honorable Arthur L. Alarcón, Circuit Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

the soundness of *Moog*'s reasoning.  *See Armco Employees Indep. Fed'n v. AK Steel Corp.*, 252 F.3d 854 (6th Cir. 2001); *Raceway Park, Inc. v. Local 47, Serv. Employees Int'l Union,* 167 F.3d 953 (6th Cir. 1999).  But like those panels, we are constrained to follow *Moog* and therefore affirm.

I.

Saint Gobain Ceramics makes refractory products for a variety of industrial clients.  The United Steelworkers of America represents the Louisville-based workers of the company.  The two parties entered into a collective bargaining agreement that went into effect on February 14, 2002, and lasted until February 13, 2005.

On March 2, 2004, the company fired two union members for insubordination.  On the same day, the union filed grievances challenging the propriety of both discharges.

The collective bargaining agreement contained a four-step process for resolving grievances.  The union's grievances proceeded without complications through steps one, two and three.  On March 29, 2004, the company issued a written denial of both step-3 grievances, which the union received on April 8, 2004.  The agreement gave the union 30 days, excluding weekends and holidays, to appeal the company's decision to step 4—arbitration.  If the union failed to appeal within the time limit, the agreement provided that the union forfeited its right to arbitrate the grievance.  The union appealed the denials by letter dated May 19, 2004, and the company received the appeals on May 24, 2004.  The company informed the union that the appeals could not proceed to arbitration because it had received them after the 30-day deadline.

The union filed an action in federal district court under § 301 of the Labor-Management Relations Act, 29 U.S.C. § 185, to compel arbitration of the grievances under the collective bargaining agreement.  Faced with cross-motions for summary judgment, the district court held that the grievances were not arbitrable given this court's decision in *Moog* and given the union's failure to comply with the limitations period.

II.

A.

When an employer and a union agree to submit grievances arising from a collective bargaining agreement to arbitration, the "limited" function of the federal courts is "to ascertain[] whether the party seeking arbitration is making a claim which on its face is governed by the contract."  *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 567–68 (1960).  Whether a collective bargaining agreement commits a dispute to arbitration, the Supreme Court has held, is a question of substantive arbitrability for the courts to decide.  *See John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547 (1964) ("[W]hether or not the company was bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties.") (internal quotation marks omitted).  Whether the parties have complied with the procedural requirements for arbitrating the case, by contrast, is a question for the arbitrator to decide.  *Id.* at 556–57.  If doubt exists over whether a dispute falls on one side or the other of this dichotomy, the presumption in favor of arbitrability makes the question one for the arbitrator.  *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 647 (1986).

In *John Wiley & Sons*, the Court considered whether the application of a time-limitations bar presented a substantive question of arbitrability for the court or a procedural question for the arbitrator.  Opposing arbitration, the company argued that the union had failed to comply with two preconditions to arbitration and that the application of these provisions presented a threshold question of arbitrability for the courts.  First, the company noted, the union had not complied with

steps 1 and 2 of the grievance procedure, which preceded the duty to arbitrate under step 3. 376 U.S. at 556. Second, the company noted, the union had not complied with the following time limitation: "Notice of any grievance must be filed with the Employer and with the Union Shop Steward within four (4) weeks after its occurrence or latest existence. The failure by either party to file the grievance within this time limitation shall be construed and be deemed to be an abandonment of the grievance." *Id.* at 556 n.11. The Court rejected the company's argument. "Once it is determined . . . that the parties are obligated to submit the subject matter of a dispute to arbitration," it held, "'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." *Id.* at 557. "Reservation of 'procedural' issues for the courts," the Court pointed out, would "not only create the difficult task of separating related issues, but would also produce frequent duplication of effort." *Id.* at 558. The Court therefore ordered the company to comply with its duty to arbitrate the underlying dispute, leaving it to the arbitrator to determine whether the time-limitations bar applied.

Given the general rule that procedural questions arising from an arbitration clause are reserved for arbitrators and given *Wiley & Sons*' application of that rule in the context of a time-limitations bar, one might assume that all timeliness questions raise procedural questions for arbitrators to decide. But after *General Drivers, Warehousemen and Helpers, Local Union 89 v. Moog Louisville Warehouse*, 852 F.2d 871 (6th Cir. 1988), that is not the case. At issue in *Moog* was this timeliness provision: "[I]f the Union fails to notify the Company . . . within 15 calendar days after the Company gives its answer in writing to a grievance at Step (b) of the grievance procedure, . . . then the Union shall be conclusively presumed to have accepted the Company's answer thereto and said grievance shall not thereafter be arbitrable." *Id.* at 873. Because this "contractual language" in the court's eyes "clearly indicate[d] that the particular grievance in dispute [was] excluded from arbitration," the court held that it had the duty "first" to decide whether "the union met the conditions precedent to arbitration"—that the application of this timeliness provision in other words presented a question of arbitrability for the court to decide. *Id.* at 875. Concluding that the company had no duty to arbitrate untimely grievances and that the union had not "met the conditions precedent to arbitration," the court dismissed the union's action to compel arbitration.

*Moog* requires us to treat the timeliness question presented here as one of substantive arbitrability. Like the collective bargaining agreement in *Moog*, this agreement contains an express time-limitations bar. The contract gives the union "30 days from the time of the written Step 3 decision to notify the Company in writing that it is appealing a grievance to arbitration." Art. 28, § 1, Step 4. "Grievances not appealed within the time limits set forth in Steps 1, 2, 3, or 4," it then says, "shall be considered settled on the basis of the decision last made and *shall not be eligible for further discussion or appeal*." *Id.* § 4 (emphasis added).

Together, these provisions expressly prevent untimely appeals of a grievance to arbitration. Much like the provision in *Moog*, the express language of the agreement demonstrates that the parties intended to foreclose arbitration of grievances that the union failed to appeal within 30 days. Because *Moog* makes this timeliness question one of arbitrability for the courts to decide, it falls to us to decide whether the union satisfied this "condition[] precedent to arbitration." 852 F.2d at 875.

In resisting this conclusion, the union points out that *Moog* applies only when "the contractual language . . . *clearly indicates* that the particular grievance in dispute is excluded from arbitration." 852 F.2d at 875 (emphasis added). But the modest differences between the time-limitation provisions in the two cases do not suffice to treat them differently. The *Moog* provision said that failure to comply with the 15-day deadline meant that "the Union shall be conclusively presumed to have accepted the Company's answer thereto and said grievance shall not thereafter be arbitrable." *Id.* at 873. Today's provision says that failure to comply with the 30-day deadline means that the "[g]rievance[] . . . shall be considered settled on the basis of the decision last made

and shall not be eligible for further discussion or appeal." Art. 28, § 4. Both provisions come to the same end: Failure to comply with the time requirement means that the dispute has been "settled" in the one case and "conclusively presumed . . . accepted" in the other, making the grievance not "arbitrable" in the one case and "not . . . eligible for further discussion or appeal" in the other.

*Moog*, it is true, involved a provision that used the word "arbitrable" while this provision uses the word "appeal." But the two words mean the same thing. As the timeliness provision itself says in this case, "the Union shall have thirty (30) days from the time of the written Step 3 decision to notify the Company in writing that it is *appealing a grievance to arbitration*." Art. 28, § 1, Step 4 (emphasis added). The only appeal available at that stage in the grievance process is an appeal to arbitration, making this contractual language no less unambiguous than the language in *Moog*. *Cf. Armco*, 252 F.3d at 861 (declining to apply *Moog* where failure to satisfy the time bar meant that "no further action may be taken on [the grievance]" and where the clause "does not specifically mention arbitrability at all or give any indication that such questions are not arbitrable").

The union next argues that *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002), forces us to reach a different conclusion. "[I]n the absence of an agreement to the contrary," *Howsam* says, "issues of substantive arbitrability are for a court to decide and issues of procedural arbitrability, *i.e.*, whether prerequisites *such as time limits*, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide." *Id.* at 85 (internal quotation marks and ellipses omitted) (emphasis added). But we do not read *Moog* as eliminating the dichotomy between issues of substantive arbitrability and procedural arbitrability when it comes to "time limit[]" provisions. It instead stands for the proposition that time limitations that an agreement makes an express precondition to arbitration present an issue of substantive arbitrability because the parties in effect have made "an agreement to the contrary."

The union saves its best argument for last—that the *en banc* court should overrule *Moog*. Time has not been kind to *Moog*, as two panels of this court have expressly criticized its reasoning and, no less expressly, called for its overruling. *See Armco Employees Indep. Fed'n v. AK Steel Corp.*, 252 F.3d 854, 860–61 (6th Cir. 2001); *Raceway Park, Inc. v. Local 47, Serv. Employees Int'l Union*, 167 F.3d 953, 963 (6th Cir. 1999). We embrace *Raceway Park*'s and *Armco*'s criticism and would simply add that *Moog* appears to create a false dichotomy between express and non-express time bars. Most time bars naturally say—clearly and expressly—that if a party does not satisfy the time deadline, the party is barred from filing the action. Put differently, the interpretive problem with time bars rarely relates to the consequences of missing a deadline; it relates to determining when the clock starts running and when it stops.

The other courts of appeals, it bears adding, have hewed to the Supreme Court's decision in *Wiley & Sons*, seconded by *Howsam*, that the application of time-bar provisions generally presents a question of procedural arbitrability for the arbitrator rather than substantive arbitrability for the court. *See Local 285, Serv. Employees Int'l Union, AFL-CIO v. Nonotuck Res. Assocs., Inc.*, 64 F.3d 735, 739–40 (1st Cir. 1995); *Rochester Tel. Corp. v. Commc'n Workers*, 340 F.2d 237, 238–39 (2d Cir. 1965); *Chauffers, Teamsters & Helpers, Local Union No. 765 v. Stroehmann Bros. Co.*, 625 F.2d 1092, 1093–94 (3d Cir. 1980); *Local 1422, Int'l Longshoremen's Ass'n v. S.C. Stevedores Ass'n*, 170 F.3d 407, 410 (4th Cir. 1999); *Smith Barney Shearson, Inc. v. Boone*, 47 F.3d 750, 753–54 (5th Cir. 1995); *Beer Sales Drivers, Local 744 v. Metro. Distribs.*, 763 F.2d 300, 303 (7th Cir. 1985); *Auto., Petroleum & Allied Indus. Employees Union, Local No. 618 v. Town & Country Ford, Inc.*, 709 F.2d 509, 511–14 (8th Cir. 1983); *Toyota of Berkeley v. Auto. Salesmen's Union, Local 1095*, 834 F.2d 751, 754 (9th Cir. 1987); *Denhardt v. Trailways, Inc.*, 767 F.2d 687, 689–90 (10th Cir.1985); *Aluminum, Brick & Glass Workers Int'l Union v. AAA Plumbing Pottery Corp.*, 991 F.2d 1545, 1548 n.1, 1550 (11th Cir. 1993); *Washington Hosp. Ctr. v. Serv. Employees Int'l Union, Local 722*, 746 F.2d 1503, 1506–08 (D.C. Cir. 1984).

To the extent courts of appeals have made exceptions to this rule, they are not premised on *Moog*'s reasoning. Some courts of appeals have decided that a time-bar provision that is crystal clear in its terms, consequences *and* application may present a substantive question of arbitrability for judicial consideration. *See In the Matter of the Application of CBS, Inc. v. Snyder*, 989 F.2d 89, 91–92 (2d Cir. 1993); *Philadelphia Printing Pressmen's Union No. 16 v. Int'l Paper Co.*, 648 F.2d 900, 904 (3d Cir. 1981); *Smith Barney Shearson, Inc. v. Boone*, 47 F.3d 750, 753 (5th Cir. 1995); *United Steelworkers of Am. v. Cherokee Elec. Coop.*, 1987 U.S. Dist. LEXIS 13344, at *8–11 (N.D. Ala. Feb. 19, 1987), *aff'd*, 829 F.2d 1131 (11th Cir. 1987), *cert. denied*, 485 U.S. 1038 (1988). Other courts of appeals appear not to make any such exception. *See Local 285, Serv. Employees Int'l Union, AFL-CIO v. Nonotuck Res. Assocs., Inc.*, 64 F.3d 735, 740 (1st Cir. 1995); *Local 1422, Int'l Longshoremen's Ass'n v. S.C. Stevedores Ass'n*, 170 F.3d 407, 410 (4th Cir. 1999); *Beer Sales Drivers, Local 744 v. Metro. Distribs.*, 763 F.2d 300, 303 (7th Cir. 1985); *Auto., Petroleum & Allied Indus. Employees Union, Local No. 618 v. Town & Country Ford, Inc.*, 709 F.2d 509, 514 (8th Cir. 1983); *Toyota of Berkeley v. Auto. Salesmen's Union, Local 1095*, 834 F.2d 751, 754 (9th Cir. 1987); *Denhardt v. Trailways, Inc.*, 767 F.2d 687, 689 (10th Cir.1985); *Washington Hosp. Ctr. v. Serv. Employees Int'l Union, Local 722*, 746 F.2d 1503, 1508, 1511–12 (D.C. Cir. 1984).

As best we can tell, *Moog* stands alone in saying that the clarity of a time-bar provision (providing, for example, that an appeal to arbitration is barred if not filed within a certain number of days), without regard to the clarity of its application (determining, for example, when the clock begins and ends), by itself makes a dispute one of substantive arbitrability. Under these circumstances, we would prefer to take a path not open to us—ignore or overrule *Moog*. *See* 6th Cir. R. 206(c); *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985). Until the *en banc* court overrules *Moog*, however, we must follow the decision for better or worse.

B.

Because *Moog* makes this timeliness question one of substantive arbitrability, we must decide whether the union satisfied this "condition[] precedent to arbitration." *Moog*, 852 F.2d at 875. Under the collective bargaining agreement, the parties "agreed that the Union shall have thirty (30) days from the time of the written Step 3 decision to notify the Company in writing that it is appealing a grievance to arbitration." Art. 28, § 1, Step 4. In determining whether the union has satisfied this requirement, the agreement also provides that "Saturdays, Sundays, holidays and off days" do not count toward the 30 days. Art. 28, § 2. The company issued its written denial of the step-3 grievance on March 29, 2004, and the union received the decisions on April 8, 2004. The union appealed the decisions on May 19, 2004.

At stake is whether the clock started running on March 29 (when the company issued the decisions) or on April 8 (when the union received the decisions). While the issue is not free from doubt, the language of the agreement favors the earlier start date. In establishing a limitations period, the agreement says that the union shall have 30 days "from the time of the written Step 3 decision," not 30 days from the union's receipt of that decision. "[T]he time of the written . . . decision" language suggests that the clock must begin running when the company issues the decision, not when the union receives it.

The context in which the provision appears supports this interpretation. Consider the next sentence of the agreement, which says, "*Upon receipt of such notice of appeal* to arbitration, the parties will meet within ten (10) days in an effort to select an impartial arbitrator." Art. 28, § 1, Step 4 (emphasis added). The juxtaposition of these two sentences shows that the drafters understood the difference between a time requirement premised on "receipt" on the one hand and "the time of . . . decision" on the other, and we may assume that they made these linguistic choices intentionally. *See Gutierrez v. Ada*, 528 U.S. 250, 255 (2000) (noting that "words and people are known by their

companions"); *see also* Art. 28, § 1, Step 3 (requiring action "[w]ithin seven (7) calendar days following *receipt of this notice of appeal*") (emphasis added). In addition, paragraph 6 of this Article uses this same 30-day period after the step-3 decision to prompt another dispute resolution procedure—an expedited arbitration process. It says that the request for expedited arbitration must be filed within 30 days "following the date of the answer given in the third step," a verbal formulation that is consistent with starting the clock within 30 days of "the time of the . . . decision."

The union counters that this analysis would permit the company to make a decision, then delay sending it to the union until well into, if not after, the running of the 30-day limitations period. The requirement that the parties implement the agreement in "good faith" precludes the company from doing any such thing. *See* Art. 28, § 4. And other provisions of the agreement make getting away with such a delay even more implausible. Step 1 of the grievance procedure requires the aggrieved employee to discuss the grievance within 48 hours of the occurrence, and gives the supervisor 48 hours to answer the grievance orally. Step 2 of the procedure gives the dissatisfied employee 72 hours to set forth in writing his objection to the step 1 answer, and gives the supervisor 72 hours to answer the complaint in writing. Step 3 gives the aggrieved employee five days following the disposition of step 2 to ask for a meeting to resolve the grievance; it then requires a meeting about the grievance within seven days; and it then *requires* the company to issue a written decision "[w]ithin seven (7) days following the Step 3 meeting." Notably, for our purposes, if the company fails to satisfy this seven-day requirement, the time bar on any appeal to arbitration does not apply. *See* Art. 28, § 4 ("Grievances not appealed within the time limits . . . shall not be eligible for further discussion or appeal. Grievances not answered by the Company within the time limits specified in any step of this procedure shall be allowed without precedent."). The brief timetables throughout this process, together with this seven-day requirement, eliminate the specter that the company could so delay issuing the decision that the time for appeal would lapse before the employee knew about the decision or even come close to lapsing before that time. The district court correctly dismissed the union's action to enforce the arbitration clause.

III.

For these reasons, we affirm.