*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0404p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STEELWORKERS OF AMERICA,
AFL-CIO-CLC,

        *Plaintiff-Appellant,*

   *v.*

SAINT GOBAIN CERAMICS & PLASTICS, INC.,

        *Defendant-Appellee.*

No. 05-6851

———————————

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 04-00603—Charles R. Simpson III, District Judge.

Argued: June 06, 2007

Decided and Filed:  October 2, 2007

Before:  BOGGS, Chief Judge; MARTIN, GUY, BATCHELDER, DAUGHTREY, MOORE, COLE, CLAY, GILMAN, GIBBONS, ROGERS, SUTTON, COOK, McKEAGUE, and GRIFFIN, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** David R. Jury, UNITED STEELWORKERS OF AMERICA, Pittsburgh, Pennsylvania, for Appellant. John W. Woodard, Jr., WYATT, TARRANT & COMBS, LLP, Louisville, Kentucky, for Appellee. **ON BRIEF:** David R. Jury, Richard J. Brean, UNITED STEELWORKERS OF AMERICA, Pittsburgh, Pennsylvania, for Appellant. John W. Woodard, Jr., Edwin S. Hopson, WYATT, TARRANT & COMBS, LLP, Louisville, Kentucky, for Appellee. James B. Coppess, Washington, D.C., for Amicus Curiae.

   SUTTON, J., delivered the opinion of the court, in which BOGGS, C. J., GUY, BATCHELDER, DAUGHTREY, GILMAN, GIBBONS, ROGERS, COOK, McKEAGUE, and GRIFFIN, JJ., joined.  CLAY, J. (pp. 8-18), delivered a separate dissenting opinion, in which MARTIN, MOORE, and COLE, JJ., joined.

———————————

## OPINION

———————————

   SUTTON, Circuit Judge.  Does a dispute over the meaning of a time-limitation bar in a collective bargaining agreement present a threshold question for an arbitrator to resolve or for a judge to resolve? Under *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543 (1964), and *Howsam*

*v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002), "a time limit rule is a matter presumptively for the arbitrator, not for the judge," *Howsam*, 537 U.S. at 85. Because neither the terms of this time-limitation provision nor the terms of the collective bargaining agreement rebut that presumption, we hold that the parties' dispute over the meaning of the provision should be resolved by an arbitrator.

I.

Saint Gobain Ceramics makes refractory products for a variety of industrial clients. The United Steelworkers of America represents the Louisville-based workers of the company. The two parties signed a collective bargaining agreement that governed their relationship from February 14, 2002, to February 13, 2005.

On March 2, 2004, the company fired two union members for insubordination. The union immediately filed grievances over both discharges.

The collective bargaining agreement contains a four-step process for resolving grievances. The union's grievances proceeded without complication through steps one, two and three. On March 29, 2004, the company issued a written denial of both step-3 grievances, which the union received on April 8, 2004. The agreement gave the union 30 days, excluding weekends and holidays, to appeal the company's decision to step 4—arbitration. If the union failed to appeal within the time limit, the agreement provided that the union forfeited its right to arbitrate the grievance. The union appealed the denials by letter dated May 19, 2004, and the company received the appeals on May 24, 2004. The company informed the union that the appeals could not proceed to arbitration (step 4) because it had received them after the 30-day deadline.

The union filed an action in federal district court under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, to compel arbitration of the two grievances under the collective bargaining agreement. Faced with cross-motions for summary judgment, the district court (1) held that *General Drivers, Warehousemen & Helpers, Local Union 89 v. Moog Louisville Warehouse*, 852 F.2d 871 (6th Cir. 1988), required a federal judge, not an arbitrator, to determine whether the time-limitation bar applied to the two grievances, (2) concluded that the union failed to satisfy the time requirement and (3) dismissed the two grievances.

Bound by *Moog*, a panel of this court affirmed. *United Steelworkers v. Saint Gobain Ceramics & Plastics, Inc.*, 467 F.3d 540, 545 (6th Cir. 2006). The union sought en banc review, and we granted the petition. *See* No. 05-6851, 2007 U.S. App. LEXIS 12224 (6th Cir. Feb. 7, 2007).

II.

A.

When an employer and a union agree to submit grievances arising from a collective bargaining agreement to arbitration, the "limited" function of the federal courts is "to ascertain[] whether the party seeking arbitration is making a claim which on its face is governed by the contract." *United Steelworkers v. Am. Mfg. Co.*, 363 U.S. 564, 567–68 (1960). Whether a collective bargaining agreement commits a dispute to arbitration, the Supreme Court has held, is a question of arbitrability for the courts to decide. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84–85 (2002); *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547 (1964). Whether the parties have complied with the procedural requirements for arbitrating the case, by contrast, is generally a question for the arbitrator to decide. *Howsam*, 537 U.S. at 85; *John Wiley & Sons*, 376 U.S. at 556–57. If doubt exists over whether a dispute falls on one side or the other of this line, the presumption in favor of arbitrability makes the question one for the arbitrator. *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 650–51 (1986); *see Moses H. Cone Mem'l Hosp. v. Mercury*

*Constr. Corp.*, 460 U.S. 1, 24–25 (1983) (recognizing a "liberal federal policy favoring arbitration agreements").

Two Supreme Court cases illustrate this dichotomy and show how it should be applied to debates about the application of a time-limitation provision. The "threshold question" in *John Wiley & Sons*, as in today's case, was "who shall decide" a series of disputes arising under a collective bargaining agreement—an arbitrator or a judge? 376 U.S. at 547. The first dispute dealt with whether a collective bargaining agreement applied to a company (Wiley) that had not signed the agreement but had merged with a company that had signed it. Because this dispute asked whether Wiley was "bound to arbitrate, as well as what issues it must arbitrate," the Court determined that it was one for judicial determination. *Id.* (internal quotation marks omitted). "The duty to arbitrate being of contractual origin," the Court reasoned, "a compulsory submission to arbitration cannot precede judicial determination that the collective bargaining agreement does in fact create such a duty." *Id.*

The Court reached a different conclusion about two other disputes presented in the case—(1) whether the union had satisfied steps 1 and 2 of the agreement's multi-step grievance procedure, which preceded the company's "duty to arbitrate" in step 3, and (2) whether the union had complied with a time-limitation bar. *Id.* at 556 & n.11. "Notice of any grievance," the time rule said, "must be filed with the Employer and with the Union Shop Steward within four (4) weeks after its occurrence or latest existence. The failure by either party to file the grievance within this time limitation shall be construed and be deemed to be an abandonment of the grievance." *Id.* (quoting the rule). "Once it is determined . . . that the parties are obligated to submit the subject matter of a dispute to arbitration," as it had been in that case, the Court reasoned that "'procedural' questions which grow out of the dispute and bear on its final disposition"—such as questions about the application of a time-limitation bar—"should be left to the arbitrator." *Id*. at 557. A different interpretation, the Court feared, "would produce . . . delay attendant upon judicial proceedings preliminary to arbitration," and, what is more, the "[r]eservation of 'procedural' issues for the courts" would "not only create the difficult task of separating related issues, but would also produce frequent duplication of effort." *Id.* at 558. In the end, the Court explained, "it best accords with the usual purposes of an arbitration clause and with the policy behind federal labor law to regard procedural disagreements not as separate disputes but as aspects of the dispute which called the grievance procedures into play." *Id.* at 558–59. The Court accordingly ordered the company to comply with its duty to arbitrate, leaving it to the arbitrator to decide whether the time-limitation and step-grievance requirements had been satisfied.

Nearly 40 years later, the Court addressed a similar issue and followed a similar path. The question at hand in *Howsam* was whether a judge or an arbitrator should apply a time-limitation rule of the National Association of Securities Dealers (NASD). No dispute, the rule said, "shall be eligible for submission to arbitration . . . where six (6) years have elapsed from the occurrence or event giving rise to the . . . dispute." 537 U.S. at 81 (quoting NASD Code of Arbitration Procedure § 10304 (1984)). The company opposed arbitration on the ground that application of the time-limitation rule presented a threshold question of arbitrability for a court to decide because a dispute that was more than six years old was "ineligible for arbitration." *Id.* at 82.

"Linguistically speaking," the Court began, "one might call any potentially dispositive gateway question a 'question of arbitrability,' for its answer will determine whether the underlying controversy will proceed to arbitration on the merits." *Id.* at 83. But the "Court's case law . . . makes clear that . . . the phrase 'question of arbitrability' has a far more limited scope." *Id.* It instead refers to "the kind of narrow circumstance where contracting parties would likely have expected a court to have decided the gateway matter, where they are not likely to have thought that they had agreed that an arbitrator would do so, and . . . where reference of the gateway dispute to

the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate." *Id.* at 83–84.

Giving content to this distinction, the Court gave two examples of threshold questions of arbitrability that courts should decide—"whether the parties are bound by a given arbitration clause" and "whether an arbitration clause . . . applies to a particular type of controversy." *Id.* at 84. "[T]he phrase 'question of arbitrability,'" by contrast, is "*not* applicable in other kinds of general circumstance where parties would likely expect that an arbitrator would decide the gateway matter," *id.*—namely "'procedural' questions which grow out of the dispute and bear on its final disposition," *id.* (quoting *John Wiley & Sons*, 376 U.S. at 557), and which "are presumptively *not* for the judge, but for an arbitrator, to decide," *id.* This latter category, the Court noted, included debates relating to whether the prerequisite steps of a grievance procedure have been followed, *id.* (citing *John Wiley & Sons*, 376 U.S. at 557), relating to "waiver, delay, or a like defense to arbitrability," *id.* (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25), and relating more generally to "whether a condition precedent to arbitrability has been fulfilled," *id.* at 85 (quoting the Revised Uniform Arbitration Act of 2000 (RUAA) § 6(c) & cmt. 2, 7 U.L.A. 12–13 (Supp. 2002)); *see also id.* ("[I]n the absence of an agreement to the contrary, issues of substantive arbitrability . . . are for a court to decide and issues of procedural arbitrability, *i.e.*, whether prerequisites such as *time limits*, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide.") (quoting RUAA § 6, cmt. 2, 7 U.L.A. at 13) (emphasis added by *Howsam*); *cf. Int'l Union of Operating Eng'rs, Local 150 v. Flair Builders, Inc.*, 406 U.S. 487, 492 (1972) (concluding that whether "particular grievances are barred by laches is an arbitrable question").

Consistent with this reasoning, the Court held that "the applicability of the NASD time limit rule is a matter presumptively for the arbitrator, not for the judge." *Howsam*, 537 U.S. at 85. And because nothing in the arbitration agreement or the NASD rules rebutted that presumption, the Court held that the application of the time-limitation rule was for the arbitrator to decide.

What emerges from *John Wiley & Sons* and *Howsam* is a fairly straightforward rule: A time-limitation provision involves a matter of procedure; it is a "condition precedent" to arbitration, *id.* (internal quotation marks omitted); and it thus is "presumptively" a matter for an arbitrator to decide, *id.* In the absence of an agreement to the contrary, in the absence in other words of language in the agreement rebutting the presumption, arbitrators rather than judges should resolve disputes over time-limitation provisions.

B.

Under this rule, the time-limitation bar in this collective bargaining agreement should be resolved by the arbitrator. Here is what the provision says:

> Both parties mutually agree that grievances to be considered must be filed promptly as set forth above after the occurrence thereof. *Grievances not appealed within the time limits set forth in Steps 1,2,3, or 4 shall be considered settled on the basis of the decision last made and shall not be eligible for further discussion or appeal.* Grievances not answered by the Company within the time limits specified in any step of this procedure shall be allowed without precedent.

JA 20 (emphasis added). The highlighted language plainly amounts to a time-limitation bar, and there is no "statement to the contrary in the arbitration agreement," *Howsam*, 537 U.S. at 85, that rebuts the presumption that disputes over the meaning of these types of "condition[s] precedent to arbitrability" should be resolved by the arbitrator, *id.* (internal quotation marks omitted).

That a party's failure to satisfy the time-limitation requirement means that the grievance "shall not be *eligible* for further discussion or appeal," JA 20 (emphasis added), does not alter this conclusion. The same could have been said in *John Wiley & Sons* and in *Howsam*. In *John Wiley & Sons*, the language was to the same effect, as it said that failure to satisfy the time limitation "shall . . . be deemed to be an abandonment of the grievance." 376 U.S. at 556 n.11. In *Howsam*, the language was not only to the same effect but indeed used the same root word, as it said that failure to satisfy the time limitation made the dispute "[in]eligible for submission to arbitration." 537 U.S. at 81.

Far from rebutting the presumption that this time-limitation provision should be decided by an arbitrator, other provisions of the collective bargaining agreement support it. The introductory sentence to all of the alternative-dispute-resolution provisions in Article 28 of the collective bargaining agreement, including the time-limitation provision, says: "Should disagreements arise as to the meaning and application of or compliance with the provisions of this agreement, there shall be no cessation of work at any time but the matter shall be settled promptly in the following manner . . . ." JA 19. This language is quite consistent with the underlying assumption of *John Wiley & Sons* and *Howsam* that parties to collective bargaining agreements would anticipate that disputes over conditions precedent to arbitration, like disputes over the merits of a grievance, would be resolved by the arbitrator. Instead of rebutting the presumption that an arbitrator should decide the meaning of a time-limitation provision, in short, this language in the collective bargaining agreement strengthens it.

What gave the district court and the original panel pause about this case was not the meaning of the Supreme Court's decisions in this area, and it was not the language of the collective bargaining agreement. It was the existence of our 1988 decision in *Moog* and the question whether it could co-exist with *John Wiley & Sons* and *Howsam*. Since *Moog*, the Supreme Court has decided *Howsam*, which reinforces the presumption that questions about the meaning of a time-limitation bar are for arbitrators to decide. And since *Moog*, two panels of this court, one of them the panel that heard this case, have expressly concluded that *Moog* was wrongly decided, *see Raceway Park, Inc. v. Local 47, Serv. Employees Int'l Union*, 167 F.3d 953, 954 (6th Cir. 1999) ("*Moog* represents a grave departure from Supreme Court doctrine mandating that issues of procedural arbitrability be determined by arbitrators not judges."); *United Steelworkers v. Saint Gobain Ceramics & Plastics, Inc.*, 467 F.3d 540, 545 (6th Cir. 2006) ("[W]e would prefer to take a path not open to us—ignore or overrule *Moog*."), while another panel has expressed doubt about *Moog*'s validity, *see Armco Employees Indep. Fed'n v. AK Steel Corp.*, 252 F.3d 854, 860 n.2 (6th Cir. 2001) (observing that *Raceway Park* "offers a thoughtful critique of *Moog*" and noting that, "regardless of what we may think of the *Moog* exception to *Wiley*, this panel cannot overturn a published decision of a previous panel").

A brief description of *Moog* shows why the criticism of these two prior panels and the skepticism of the third panel are on the mark. After the employer discharged one of its workers, it refused the union's demand to submit the matter to arbitration under the collective bargaining agreement because the union had not filed the arbitration request within the 15-day period provided in the agreement. "[I]f," the time-limitation rule said, "the Union fails to notify the Company . . . within 15 calendar days after the Company gives its answer in writing to a grievance at Step (b) of the grievance procedure, . . . *then the Union shall be conclusively presumed to have accepted the Company's answer thereto and said grievance shall not thereafter be arbitrable*." 852 F.2d at 873 (emphasis added). Because this "contractual language" in the court's eyes "clearly indicate[d] that the particular grievance in dispute [was] excluded from arbitration," the court held that it had the duty "first" to decide whether "the union met the conditions precedent to arbitration"—that the application of this timeliness provision in other words presented a question of arbitrability for the court to decide. *Id.* at 875.

There is no difference, however, between the clarity of the consequences of failing to file the grievance on time in *Moog* on the one hand and *John Wiley & Sons* and *Howsam* on the other. All three provisions came to the same clear end: In *Moog*, the "grievance shall not thereafter be arbitrable," *id.* at 873; in the other two cases, the dispute shall not "be eligible for submission to arbitration," *Howsam*, 537 U.S. at 81, and "shall . . . be deemed to be an abandonment of the grievance," *John Wiley & Sons*, 376 U.S. at 556 n.11. There thus is no basis for saying that the language at issue in *Moog* somehow rebuts the presumption that the matter should be resolved by an arbitrator while the language at issue in these other cases does not.

Also unavailing is Saint Gobain's related attempt to distinguish Article 28 from the clauses at issue in *John Wiley & Sons* and *Howsam*. Article 28, the company says, supplies a "narrow agreement[] to use a multi-step grievance resolution procedure culminating in arbitration if . . . there has been a timely appeal to arbitration, and the grievance has not been otherwise settled," Supp'l Br. at 17–18, while the clauses in the other two cases "involved broad, catch-all agreement[s]" to arbitrate all disputes, *id.* at 17, 21. But neither *John Wiley & Sons* nor *Howsam* draws any such distinction, nor do they limit the presumptive arbitrability of time-limitation provisions to situations in which the parties agreed to catch-all arbitration clauses. And even if they did, it is far from clear why the introductory sentence of Article 28 does not satisfy this proposed requirement: "Should disagreements arise as to the meaning and application of or compliance with the provisions of this agreement, there shall be no cessation of work at any time but the matter shall be settled promptly in the following manner," which culminates in "arbitration." JA 19.

The problem with *Moog* is not the existence of some unusual feature of the collective bargaining agreement or of the time-bar provision in that case but that *Moog* turned on its head the presumption that time-limitation disputes should be resolved by an arbitrator. Instead of treating a dispute over the meaning of a time-limitation rule as a "condition precedent to arbitrability" that is "presumptively for the arbitrator, not the judge," to decide, *Howsam*, 537 U.S. at 85 (internal quotation marks omitted), *Moog* does the opposite—treating it as a "condition[] precedent" to arbitration that the judge must decide, 852 F.2d at 875. Whether *Moog* should have appreciated the point after *John Wiley & Sons* makes no difference; the fact remains that *Howsam*, decided fourteen years after *Moog*, leaves no doubt about the presumption and its applicability here. *Moog* is overruled.

There is more common ground between the dissent and our opinion than the dissent suggests. We do not establish a bright-line rule that timeliness questions must inexorably go to the arbitrator. As with all arbitration matters, the matter is one of contract: Just as two parties need not enter an arbitration contract in the first place, they need not enter an arbitration agreement that submits questions of timeliness to arbitration. Parties who wish to steer timeliness disputes to the courts remain free to do so, and nothing in this opinion is to the contrary.

The problem here is what happens when the parties are silent on the point—when they set up an arbitration procedure to resolve their grievances, as was true here, but when they do not indicate a preference for judicial or arbitral resolution of a dispute over the meaning of a timeliness provision in the collective bargaining agreement, as was also true here. In that setting, there is nothing unusual about courts establishing default rules or presumptions about the meaning of such silence for the purposes of the case before them and for the purposes of future cases. That is all we have done.

In embracing a presumption that disputes over a timeliness provision are for an arbitrator to decide, we take some comfort from the following: (1) that is what *John Wiley & Sons* and *Howsam* did; (2) that is what the Supreme Court has said we should do, *see Howsam*, 537 U.S. at 85 ("[I]n the absence of an agreement to the contrary, issues of substantive arbitrability . . . are for a court to

decide and issues of procedural arbitrability, *i.e.*, whether prerequisites such as *time limits*, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide.") (quoting RUAA § 6, cmt. 2, 7 U.L.A. at 13) (emphasis added by *Howsam*); (3) that is what makes sense in light of the background general presumption in favor of resolving collective bargaining and other disputes through arbitration, *see Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25 (noting that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"); *AT&T Techs.*, 475 U.S. at 650; and (4) that is what every other court of appeals in the country has done, *see Local 285, Serv. Employees Int'l Union, AFL-CIO v. Nonotuck Res. Assocs., Inc.*, 64 F.3d 735, 739–40 (1st Cir. 1995); *Rochester Tel. Corp. v. Commc'n Workers*, 340 F.2d 237, 238–39 (2d Cir. 1965); *Chauffers, Teamsters & Helpers, Local Union No. 765 v. Stroehmann Bros. Co.*, 625 F.2d 1092, 1093–94 (3d Cir. 1980); *Local 1422, Int'l Longshoremen's Ass'n v. S.C. Stevedores Ass'n*, 170 F.3d 407, 410 (4th Cir. 1999); *Smith Barney Shearson, Inc. v. Boone*, 47 F.3d 750, 753–54 (5th Cir. 1995); *Beer Sales Drivers, Local Union No. 744 v. Metro. Distribs.*, 763 F.2d 300, 303 (7th Cir. 1985); *Auto., Petroleum & Allied Indus. Employees Union, Local No. 618 v. Town & Country Ford, Inc.*, 709 F.2d 509, 511–14 (8th Cir. 1983); *Toyota of Berkeley v. Auto. Salesmen's Union, Local 1095*, 834 F.2d 751, 754 (9th Cir. 1987); *Denhardt v. Trailways, Inc.*, 767 F.2d 687, 689–90 (10th Cir. 1985); *Aluminum, Brick & Glass Workers Int'l Union v. AAA Plumbing Pottery Corp.*, 991 F.2d 1545, 1548 n.1, 1550 (11th Cir. 1993); *Wash. Hosp. Ctr. v. Serv. Employees Int'l Union, Local 722*, 746 F.2d 1503, 1506–08 (D.C. Cir. 1984).

Nor do the two cases cited by the dissent—*Philadelphia Printing Pressmen's Union No. 16 v. International Paper Co.*, 648 F.2d 900 (3d Cir. 1981), and *United Steelworkers v. Cherokee Electric Cooperative*, No. 86-AR-2163-M, 1987 WL 17056 (N.D. Ala. Feb. 19, 1987), *aff'd*, 829 F.2d 1131 (11th Cir. 1987)—say otherwise. In *Philadelphia Printing*, the Third Circuit distinguished between procedural default issues, including "delay" in filing a grievance, and the "total" failure to file a grievance at all. 648 F.2d at 904 n.7 (internal quotation marks omitted). Disputes arising from the former were for the arbitrator, and disputes arising from the latter were for the courts. *Id.* Today's case involves a dispute about "delay" and is therefore for the arbitrator, says *Philadelphia Printing*. *Cherokee Electric* is no more helpful, for there the union conceded that it did not comply with the collective bargaining agreement's timeliness provision—leaving no dispute to submit to arbitration. *See Cherokee Elec.*, 1987 WL 17056, at *3–4. Under that court's reasoning as well, today's dispute would be for the arbitrator. *Id.* at *4 ("[I]n order to be entitled to present the issue of the timeliness of a grievance to an arbitrator, the issue must have been legitimately raised by the Union so that there is a bona fide procedural timeliness question to be determined by the arbitrator.").

III.

For these reasons, we reverse and remand the case to the district court to enter an order referring the grievance to arbitration.

-------------------

**DISSENT**

-------------------

CLAY, Circuit Judge, dissenting.  The majority unjustifiably attempts to reduce the dissent to a concern about questions of timeliness, but the legal and factual issues addressed here cannot be so narrowly confined.  Instead of improperly reframing the issues in an attempt to diminish the dissent, the majority should have meaningfully engaged the merits of the arguments presented by this opinion.  The majority insists on imposing an obligation to arbitrate disputes even where parties never agreed to submit a particular dispute to arbitration.  The general presumption in favor of arbitration cannot be interpreted so broadly.  In this case, the majority violates the express terms of the parties' collective bargaining agreement inasmuch as the parties simply did not contemplate that questions of timeliness would be submitted to an arbitrator.  Instead of effectuating the parties' collective bargaining agreement, the majority blithely ignores the express intent and understanding of the parties, and the plain language of the parties' agreement.

The principal difficulty with the majority opinion is that it wrongfully insulates decisions regarding arbitrability from judicial adjudication even when there is no basis for believing that the parties have contractually agreed to submit the subject matter of a particular dispute to arbitration.  In addition to being unrestrained and overbroad in its implications, the majority opinion is problematical on two levels—namely, it improperly determines when a matter should be subject to arbitration, and whether the parties have agreed that there should be a judicial or arbitrable decision to adjudicate the dispute.

**BACKGROUND**

The facts of this case are relatively simple.  Plaintiff United Steelworkers of America, AFL-CIO-CLC, is a union which represents employees of Defendant Saint Gobain Ceramics & Plastics, Inc.  The parties entered into a collective bargaining agreement which sets forth a four-step grievance appeal process.  In pertinent part, the collective bargaining agreement contains a thirty-day period to appeal a grievance decision from step 3 to arbitration:

> Article 28
> Adjustment of Grievances
> 1.       Should disagreements arise as to the meaning and application
>          of or compliance with the provisions of this agreement . . . the
>          matter shall be settled promptly in the following manner:
>
> . . .
> STEP 4:
>          It is agreed that the Union shall have thirty (30) days from the
>          time of the written Step 3 decision to notify the Company in
>          writing that it is appealing a grievance to arbitration.

(J.A. 19) (formatting added).  The thirty-day period excludes "Saturdays, Sundays, [h]olidays and off days (including vacations [or] [s]hutdown for repairs)." (J.A. 20)  Article 28 of the collective bargaining agreement limits the authority of the arbitrator:

> An arbitrator to whom any grievance shall be submitted shall be
> authorized only to interpret and apply the provisions of the agreement
> insofar as shall be necessary to the determining of such grievances,

> but he shall not have authority to alter in any way the provisions of this agreement.

(J.A. 19) The parties also conditioned the right to arbitrate a grievance decision on strict compliance with the time limits set forth in the collective bargaining agreement:

> Article 28
> Adjustment of Grievances
> 4.    Both parties mutually agree that grievances to be considered must be filed promptly as set forth above after the occurrence thereof. *Grievances not appealed within the time limits set forth in Steps 1, 2, 3, or 4 shall be considered settled on the basis of the decision last made and shall not be eligible for further discussion or appeal.*

(J.A. 20) (emphasis added). Notably, the collective bargaining agreement contains no provision for the determination of arbitrability. Nothing in the collective bargaining agreement indicates that a dispute concerning timeliness should be submitted to arbitration. Indeed, the express terms of the collective bargaining agreement indicate that the parties simply did not contemplate submitting such disputes to arbitration; rather, the plain language of the collective bargaining agreement shows that the parties contractually agreed that the failure to pursue a timely appeal constitutes a substantive bar to arbitration.

On March 2, 2004, the Defendant employer terminated two employees "for multiple, severe and willful violations of Company Work Rules in disregard of the Company's business interest." (J.A. 42; *see also* J.A. 43 (same)). Plaintiff filed grievances alleging that the employees were subject to "unjust suspension [and] discharge [ ] for a verbal altercation" with a supervisor. (J.A. 37; *see also* J.A. 38 (same)). On March 29, 2004, Defendant issued a written step 3 decision denying Plaintiff's "grievance[s] and request[s] for reinstatement and back pay." (J.A. 42; *see also* J.A. 43 (same)). Plaintiff received the employer's decision on April 8, 2004, and appealed the decision on May 19, 2004. Defendant received notice of Plaintiff's appeal on May 24, 2004, and denied the request to refer the grievances to arbitration because the thirty day period to request an appeal had expired. In turn, Plaintiff filed an action to compel arbitration of the grievances under the collective bargaining agreement in the Western District of Kentucky. The district court, applying *Gen. Drivers, Warehousemen and Helpers, Local Union 89 v. Moog Louisville Warehouse*, 852 F.2d 871 (6th Cir. 1988), granted summary judgment in favor of Defendant, finding that under the provisions of the collective bargaining agreement the grievances were not arbitrable because Plaintiff failed to timely file an appeal. The district court concluded that the limitations period set forth in the collective bargaining agreement barred Plaintiff's grievances from proceeding to arbitration.[1]

---

[1] The district court properly found that Plaintiff's appeal to arbitration was untimely. The plain language of the contract indicates that the clock begins to run on the date of the written Step 3 decision. *See* J.A. 19 (The parties "agreed that the Union shall have *thirty (30) days from the time of the written Step 3 decision to notify the Company in writing* that it is appealing a grievance to arbitration.") (emphasis added). Defendant had to receive notice of Plaintiff's appeal to arbitration within thirty days. The step 3 decision for Plaintiff's grievances was issued on March 29, 2004. Defendant received the notice of appeal to arbitration on May 24, 2004. As the district court aptly noted, "[e]xcluding holidays and weekends, there were 39 business days between these two dates." *United Steelworkers of America, AFL-CIO-CLC v. Saint Gobain Ceramics & Plastics Inc.*, No. 304CV603S, 2005 WL 3088550, at *5-6 (W.D. Ky. Nov. 14, 2005) (unpublished case). Therefore, Plaintiff's notice of appeal to arbitration was untimely under the terms of the parties' collective bargaining agreement.

**DISCUSSION**

I.      **Legal Framework**

In this case, the district court's summary judgment decision is reviewed *de novo*, "as is the district court's decision to [deny Plaintiff's] motion to compel arbitration." *McMullen v. Meijer, Inc.*, 355 F.3d 485, 489 (6th Cir. 2004) (citing *Wiepking v. Prudential-Bache Sec., Inc.*, 940 F.2d 996, 998 (6th Cir. 1991)). "Similarly, the district court's decisions regarding the existence of a valid arbitration agreement and the arbitrability of a particular dispute are reviewed *de novo*." *Id.* (citing *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 311 (6th Cir. 2000)).

The Supreme Court has clearly established that "[a]rbitration . . . is a matter of consent, not coercion." *EEOC. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) (internal quotation marks and citation omitted). "[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). The Federal Arbitration Act ("the Act"), 9 U.S.C. § 1 *et seq.*, "directs courts to place arbitration agreements on equal footing with other contracts, but it 'does not require parties to arbitrate when they have not agreed to do so.'" *Waffle House*, 534 U.S. at 293 (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)). Although "ambiguities in the language of [an arbitration] agreement should be resolved in favor of arbitration," courts cannot "override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *Id.* (citing *Volt*, 489 U.S. at 476); *see also Int'l Union, United Auto., Aerospace, and Agr. Implement Workers of Am.(UAW), and Local 134, UAW v. Yard-Man, Inc.*, 716 F.2d 1476, 1479 (6th Cir. 1983) (noting that a "collective bargaining agreement should [not] be construed to affirmatively promote any particular policy"). Simply put, the Act "make[s] arbitration agreements as enforceable as other contracts, but not more so." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967).

Generally, under the presumption of arbitrability, "a court, not an arbitrator, will ordinarily decide an 'arbitrability' question," *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 82 (2002) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995)), and "the arbitrator [ ] decide[s] 'allegation[s] of waiver, delay, or a like defense to arbitrability,'" *id.* at 84 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S.1, 24-25 (1983)). Notably, the Supreme Court has found that "labor disputes . . . cannot be broken down so easily into their 'substantive' and 'procedural' aspects" because "[q]uestions concerning the procedural prerequisites to arbitration do not arise in a vacuum; they develop in the context of an actual dispute about the rights of the parties to the contract or those covered by it." *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 556-57 (1964).

The rationale that underlines the presumption of arbitrability is that arbitrators are "well situated to answer [ ] question[s]" related to "contract interpretation and arbitration procedures," *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 453 (2003), and "in a better position than courts to interpret the terms of a [collective bargaining agreement]," *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 78 (1998) (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)) (emphasis omitted). Nevertheless, the presumption of arbitrability is rebuttable. "[W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T*, 475 U.S. at 650 (quoting *Warrior*, 363 U.S. at 582-83) (alteration in original). "[W]hen courts decide whether a party has agreed that arbitrators should decide arbitrability[,] [c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *First Options*, 514 U.S. at 944 (quoting

*AT&T*, 475 U.S. at 649). Courts are also charged with determining whether the parties "intended to have a court, rather than an arbitrator, interpret and apply" an arbitration provision. *Howsam*, 537 U.S. at 86.

The Supreme Court has recognized that whether a court or an arbitrator "has the primary authority to decide whether a party has agreed to arbitrate can make a critical difference to a party resisting arbitration." *First Options*, 514 U.S. at 942. Indeed, "one can understand why courts might hesitate to interpret silence or ambiguity on the 'who should decide arbitrability' point as giving the arbitrators that power, for doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide." *Id.* at 945 (citations omitted). "[T]he question of arbitrability—whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination." *AT&T*, 475 U.S. at 649.

## II.    Analysis

Essentially, the issue in this case is whether, under the collective bargaining agreement, the thirty day period to refer a grievance to arbitration begins to run as of the date of receipt of Defendant's written decision—as Plaintiff contends, thus, making the grievance timely and therefore arbitrable—or the date of its issuance, as Defendant argues, thereby rendering the grievance untimely and therefore not arbitrable. The facts in this case are analogous to the facts in *Moog*. The defendant in *Moog*

> discharged a member of the plaintiff union who protested his discharge through the procedurally defined grievance steps up to the final stage of arbitration. [Defendant] refused the demand for arbitration, contending that the request made was untimely and therefore rendered the grievance not arbitrable. The union brought [an] action to compel [defendant] to arbitrate.

852 F.2d at 872. The language of the collective bargaining agreement in *Moog* provided that

> if the Union fails to notify the Company . . . within 15 calendar days after the Company gives its answer [to the grievance] . . ., then *the Union shall be conclusively presumed to have accepted the Company's answer thereto and said grievance shall not thereafter be arbitrable.*

*Id.* at 873 (emphasis added). The collective bargaining agreement in *Moog* stipulated that an untimely grievance was not arbitrable. The plain language of the agreement shows that submitting disputes concerning timeliness to arbitration was simply never contemplated by the parties.

In light of the language contained in the collective bargaining agreement, "*Moog* held that a grievance was not properly arbitrable because the union had not submitted its grievance within the time frame dictated in the collective bargaining agreement." *Armco Employees Indep. Fed'n v. AK Steel Corp.*, 252 F.3d 854, 860 (6th Cir. 2001). Indeed, *Moog* found that, under the parties' collective bargaining agreement, timeliness was a question of substantive arbitrability that should be presented to a court and not an arbitrator. *See Id.* at 860 (noting that "*Moog* concluded that th[e] [collective bargaining agreement] language indicated *substantive* not *procedural* arbitrability.") (emphasis in original). The holding in *Moog* is clearly fact specific; the Court simply interpreted and applied the language contained in the parties' collective bargaining agreement.

Under *Moog*, courts are charged with reviewing the collective bargaining agreement to determine whether the time limitations are procedural or substantive provisions based on the language contained therein. *Moog*, 852 F.2d at 872. Simply put, the language set forth in the parties' agreement is dispositive and must be used to determine whether a particular dispute was intended by the parties to be arbitrable. Express contractual provisions, to the extent that they are available, must be consulted to determine whether the failure to follow the procedures outlined in the agreement constitutes a procedural issue that may be presented to an arbitrator or a substantive issue that precludes arbitrability. *Id.* (expressly holding that this Court "examine[s], therefore, the agreement that sets out the mutual understanding of the parties"). In short, contractual provisions and the parties' express intent are the guiding principles in this inquiry. This approach presumably makes sense because parties may negotiate different collective bargaining agreement provisions and may contractually decide whether to treat time limitations as procedural or substantive matters.

In *Green Tree Fin. Corp. v. Bazzle*, a "case concern[ing] contracts between a commercial lender and its customers, each of which contain[ed] a clause providing for arbitration of all contract-related disputes," the parties disputed whether the contracts "forbid class arbitration." 539 U.S. at 447. The Supreme Court held that "[i]n certain limited circumstances" it is appropriate for "courts [to] assume that the parties intended courts, not arbitrators, to decide a particular arbitration-related matter (in the absence of "clea[r] and unmistakabl[e]" evidence to the contrary)." *Id.* at 452 (citing *AT&T*, 475 U.S. at 649). The Court explained that

> [t]hese limited instances typically involve matters of a kind that "contracting parties would likely have expected a court" to decide. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). They include certain gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy. See generally *Howsam*, *supra*. See also *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 546-47 (1964) (whether an arbitration agreement survives a corporate merger); *AT&T*, *supra,* at 651-52 (whether a labor-management layoff controversy falls within the scope of an arbitration clause).

*Id.* The Court found that

> [t]he question here—whether the contracts forbid class arbitration— does not fall into this narrow exception. It concerns neither the validity of the arbitration clause nor its applicability to the underlying dispute between the parties. Unlike *First Options*, the question is not whether the parties wanted a judge or an arbitrator to decide *whether they agreed to arbitrate a matter*. 514 U.S., at 942-945. Rather the relevant question here is what *kind of arbitration proceeding* the parties agreed to.

*Id.* at 452-53 (emphasis in original). Although the Court found that "th[e] matter of contract interpretation should be for the arbitrator, not the courts, to decide," this outcome was clearly based on "the arbitration contracts' sweeping language concerning the scope of the questions committed to arbitration." *Id.* at 453. As in *Moog*, the Supreme Court determined whether the dispute should be presented to an arbitrator or to a court based on the underlying facts and the language contained in the parties' agreements.

The majority cites a plethora of cases in support of its position in this case.  However, the cases are plainly distinguishable from this matter.  *See, e.g, Local 285, Serv. Employees Int'l Union, AFL-CIO v. Nonotuck Res. Assocs., Inc.*, 64 F.3d 735, 741-42 (1st Cir. 1995) (Court found that the language in the collective bargaining agreement was almost identical to the arbitration agreement in *Wiley*); *Chauffeurs, Teamsters and Helpers, Local Union No. 765 v. Stroehmann Bros. Co.*, 625 F.2d 1092, 1094 (3d Cir. 1980) (parties selected an arbitrator "to fill in the interstices of the written text. The arbitration clause refers, after all, to 'any difference in opinion . . . regarding the interpretation or application of any provision of this Agreement'"); *Rochester Tel. Corp. v. Commc'n Workers of Am.*, 340 F.2d 237, 238 (2d Cir. 1965) (finding that the parties' collective bargaining agreement included "broad provisions for the arbitration of disputes"); *Local 1422, Int'l Longshoremen's Ass'n v. S.C. Stevedores Ass'n*, 170 F.3d 407, 408 (4th Cir. 1999) (employer made no effort to factually distinguish the parties' collective bargaining agreement from the arbitration agreement in *Wiley*); *Toyota of Berkeley v. Auto. Salesman's Union, Local 1095, United Food and Commercial Workers Union*, 834 F.2d 751, 754 (9th Cir. 1987) (the principal issue was not "whether [the arbitrator] had jurisdiction over the dispute, but rather whether he could proceed without [a party] present."); *Denhardt v. Trailways, Inc.*, 767 F.2d 687, 689 (10th Cir. 1985) (the parties' collective bargaining agreement expressly "state[d] that arbitration is the exclusive means for resolving grievances"); *Aluminum Brick and Glass Workers Int'l Union v. AAA Plumbing Pottery Corp.*, 991 F.2d 1545, 1547 (11th Cir. 1993) (employer made no effort to factually distinguish the parties' collective bargaining agreement from the arbitration agreement in *Wiley*); *Washington Hosp. Ctr. v. Serv. Employees Int'l Union Local 722, AFL-CIO*, 746 F.2d 1503, 1507 (D.C. Cir. 1984) (finding that the employer "has not even attempted to distinguish *Wiley*" and that "*Wiley* is indistinguishable").

Notably, cases the majority purportedly relies on clearly support a finding that not all disputes should be submitted to arbitration.  *See Smith Barney Shearson, Inc. v. Boone*, 47 F.3d 750, 753 (5th Cir. 1995) (plainly holding that the district court must determine "whether the subject matter of the dispute was subject to arbitration under the parties' agreement" and interpreting the express language in the parties collective bargaining agreement to determine whether the grievance was arbitrable); *Beer, Soft Drink, Water, Fruit Juice, Carbonic Gas, Liquor Sales Drivers, Helpers, Inside Workers, Bottlers, Warehousemen Sch. Sightseeing, Charter Bus Drivers, Gen. Promotional Employees of Affiliated Indus., Local Union No. 744 v. Metro. Distribs., Inc.*, 763 F.2d 300, 304 n.4 (7th Cir. 1985) (noting that it may be "proper for a court to determine whether one party to a collective bargaining agreement has waived its right to arbitration because it has pursued its dispute in administrative or judicial proceedings rather than in arbitration"); *Auto., Petroleum and Allied Indus. Employees Union, Local No. 618 v. Town and Country Ford, Inc.*, 709 F.2d 509, 511 (8th Cir. 1983) (discussing *Wiley* and *Philadelphia Printing* and finding that "[t]he essential inquiry when determining the arbitrability of an issue should be the intent of the parties to the contract").

Contrary to the majority's averments, as illustrated in the cases cited above, the circuit courts of appeals are divided on the question of whether a union may compel a company, or vice versa, to arbitrate a grievance appeal filed after the time period set forth in the collective bargaining agreement.  It is clear, however, that at least two courts have found that disputes concerning the interpretation of collective bargaining agreement provision may be properly presented to a court. *See, e.g.*, *Philadelphia Printing Pressmen's Union No. 16 v. Int'l Paper Co.*, 648 F.2d 900, 904 (3d Cir. 1981); *see also United Steelworkers of Am., AFL-CIO-CLC v. Cherokee Elec. Co-op.*, No. 86-AR-2163-M, 1987 WL 17056, at *2 (N.D. Ala. Feb. 19, 1987), *aff'd*, 829 F.2d 1131 (11th Cir. 1987).

In *Philadelphia Printing*, a case where a union waited for approximately ten months to submit a written grievance challenging the termination of an employee, the parties were not in agreement that the underlying dispute was arbitrable.  When the employer denied the grievance, the

union sued to compel arbitration. The Third Circuit found that in order to rule on whether "the parties [ ] are obligated to submit the [ ] matter to arbitration," it must first determine "whether or not the company was bound to arbitrate, as well as what issues it must arbitrate." *Philadelphia Printing*, 648 F.2d at 903 (quoting *Atkinson v. Sinclair Refining Corp.*, 370 U.S. 238, 241 (1962)). The Court noted that "[a]lthough the parties could have provided that any dispute over whether there is an arbitrable dispute would be for the arbitrator, this was not done." *Id.* (footnote omitted). The Court found that under the parties' collective bargaining agreement, the "grievance-arbitration procedure" was not a "'mere procedural formality' to be dispensed with unilaterally." *Id.* at 904. The Third Circuit held that the failure to proceed with the grievance procedures, as required by the collective bargaining agreement, substantively precluded an order to arbitrate. *Id.* As the Court aptly stated:

> [w]hat the Union seeks is to skip the entire grievance machinery established by the collective bargaining agreement and to proceed directly to arbitration of a controversy that has not ripened into a grievance. This it may not do.

*Id.* at 904 (footnote omitted). Contrary to the majority's averments, the Court simply did not base its decision on the timeliness of the grievance; rather, the Court found that the parties never agreed to arbitrate the underlying dispute. *Id.* at 904 n.7.

In *Cherokee*, a case where a grievance was not filed within the time frame stipulated in a collective bargaining agreement, the Eleventh Circuit affirmed the district court's finding that a dispute concerning the timeliness of a grievance was not arbitrable. Contrary to the majority's arguments, timeliness was not the principal issue in *Cherokee*; rather, "[t]he issue before th[e] court [wa]s whether the parties to the Collective Bargaining Agreement intended to arbitrate all grievances or whether, because of an express exclusion or other 'forceful evidence,' [the employer] intended to exclude from arbitration those grievances that are untimely filed." *Cherokee*, 1987 WL 17056, at *2.

The parties' collective bargaining agreement stipulated that "[a]ny grievance not reported within five (5) working days of first knowledge of the occurrence causing the grievance shall be deemed wiaved [sic] and non-existent." *Id.* at *1. As in the instant case, "[t]he contract [in *Cherokee*] clearly state[d] that if the time limitations are not complied with, the grievance is deemed waived, non-existent, and a settlement of the grievance in favor of the party to whom the default runs" is required. *Id.* at *4. Since the time limitation provision substantively barred the grievance from being referred to arbitration, "the Collective Bargaining Agreement expressly exclude[d] [untimely arbitration grievances] from arbitration." *Id.* In *Cherokee*, whether the time limitation provision was a substantive bar to arbitrability was determined based on the parties' intent and the language contained in the parties' contractual agreement. The district court aptly recognized that "the question of arbitrability—whether a collective bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination." *Id.* at *2 (quoting *AT&T*, 475 U.S. at 649). *Cherokee*, like *Philadelphia Printing*, supports an affirmance of the district court's decision in this case. In the instant case, the parties never agreed to submit the underlying dispute to arbitration, *Philadelphia Printing*, 648 F.2d at 903, and the time limitation provision at issue in this case is a substantive bar to arbitrability, *Cherokee*, 1987 WL 17056, at *2.

Contrary to the majority's contention, *Moog* can be reconciled with *Wiley*. In *Wiley*, a union sued to compel a company to arbitrate pursuant to a "collective bargaining agreement [that] provides for arbitration as the final stage of *grievance procedures which are stated to be the 'sole means of obtaining adjustment' of 'any differences, grievance or dispute between the Employer and the Union*

*arising out of or relating to this agreement*, or its interpretation or application, or enforcement." 376 U.S. at 553 (citation omitted) (emphasis added). The company argued that the union failed to follow the procedural steps set forth in the collective bargaining agreement to commence an arbitration, and that a court should determine whether the failure to adhere to the procedural requirements precluded arbitration. The company urged the Supreme Court to find "that the question whether 'procedural' conditions to arbitration have been met must be decided by the court and not the arbitrator." *Id.* at 556. Based on the express provisions of the parties' collective bargaining agreement, the Supreme Court declined to adopt the company's position. Rather, the Court found that

> labor disputes of the kind involved here *cannot be broken down so easily into their 'substantive' and 'procedural' aspects.* Questions concerning the procedural prerequisites to arbitration do not arise in a vacuum; they develop in the context of an actual dispute about the rights of the parties to the contract or those covered by it.

*Id.* at 556-57 (emphasis added). Contrary to the majority's argument, *Wiley* expressly left open the possibility that, depending on the facts, the intent and understanding of the parties, and the language contained in the collective bargaining agreement, procedural issues and disputes may be properly presented to a court rather than an arbitrator. *Id.* at 546-47 ("'[W]hether or not the company was bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties.'" (quoting *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 241 (1962)). Indeed, the Supreme Court bluntly discouraged the compartmentalization of disputes and issues as procedural or substantive. This approach is compatible with *Moog* because a distinction between procedural and substantive issues must be grounded in the facts surrounding the dispute and the language contained in the parties' collective bargaining agreement. The outcome in *Wiley* makes sense because the broad language in the parties' arbitration agreement made all disputes under the agreement in that case arbitrable.

In *Howsam*, a case concerning whether a court or an arbitrator of the National Association of Securities Dealers ("NASD") should enforce a NASD time limit rule for the submission of arbitration claims, the Supreme Court found that

> the applicability of the NASD [arbitration] time limit rule is a matter presumptively for the arbitrator, not for the judge. The time limit rule closely resembles the gateway questions that this Court has found not to be "questions of arbitrability." *E.g.*, *Moses H. Cone Memorial Hospital*, *supra,* at 24-25, (referring to "waiver, delay, or a like defense"). Such a dispute seems an "aspec[t] of the [controversy] which called the grievance procedures into play." *John Wiley*, *supra,* at 559.

537 U.S. at 85. Notably, *Howsam* is distinguishable from this case and *Moog*, in part, because it did not involve a labor arbitration matter and did not concern the interpretation of a collective bargaining agreement. Furthermore, the majority misconstrues the holding in *Howsam*.

Admittedly, the Supreme Court expressly held that the NASD time limit rule is a procedural inquiry that is properly presented to an arbitrator. However, nothing in *Howsam* supports the majority's proposition that all time limit rules—regardless of parties' intent and the language contained in the parties' collective bargaining agreement—are procedural issues. As in *Moog*, the holding in *Howsam* is fact specific. Unlike this case, in *Howsam* the parties expressly agreed to submit all disputes to arbitration:

> [A]ll controversies . . . concerning or arising from . . . any account
> . . ., any transaction . . ., or . . . the construction, performance or
> breach of . . . any . . . agreement between us . . . shall be determined
> by arbitration before any self-regulatory organization or exchange of
> which Dean Witter is a member.

*Id.* at 81 (citation omitted) (alterations in original). Since the language in the parties' arbitration agreement was extraordinarily broad, the Supreme Court simply could not "conclude that the parties intended to have a court, rather than an arbitrator, interpret and apply the NASD time limit rule." *Id.* at 86.

The majority is wrongfully attempting to expand *Howsam* to this case. The Supreme Court's guidance with respect to NASD time limit rules simply cannot be imposed and grafted onto this case because there are special policy considerations that apply in NASD arbitrations. *See, e.g.*, *Howsam*, 537 U.S. at 85 (finding that "the NASD arbitrators[ ] [are] comparatively more expert about their own [time limitation] rule, [and are] comparatively better able to interpret and to apply it"). Concededly, this Court has found that *Howsam* governs the issue of the timeliness of submission of claims for a NASD arbitration. *See Smith v. Dean Witter Reynolds, Inc.*, No. 02-6158, 2004 WL 1859623 (6th Cir. 2004) (per curiam) (unpublished case) (applying *Howsam* and noting that *Howsam* "made it clear that the validity of the defense raised in [a NASD arbitration case] was a matter for the arbitrator to determine"). This Court should continue to confine the application of *Howsam* to NASD arbitration cases because nothing in *Howsam* stands for the proposition that the arbitrability of disputes concerning time limitation provisions in collective bargaining agreements is governed by that case. Consequently, there is no legal or factual basis for extending and imposing the holding in *Howsam* to the instant case.

The majority misconstrues *Wiley* and *Howsam* to improperly create an across-the-board rule to govern the arbitrability of time limitation provisions in labor arbitration cases. As explained above, this approach is misplaced. Unless the parties have clearly and unmistakably agreed that an arbitrator is to determine issues of arbitrability, courts should be able to determine whether a dispute is subject to arbitration. *See, e.g.*, *Warrior*, 363 U.S. at 582-83 (Arbitration is favored "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute"). A determination with respect to whether a time limitation provision constitutes a procedural or substantive issue should be based on the facts underlying the claim and the language contained in the collective bargaining agreement. *See, e.g.*, *Wiley*, 376 U.S. at 546-47 ("[W]hether or not the company was bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties.") (internal quotation marks and citations omitted). As the Supreme Court has aptly stated, "the question of arbitrability—whether a collective bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination." *AT&T*, 475 U.S. at 649.

Contrary to the majority's holding, this Court is charged with giving effect to the parties' intent as reflected by the language in the parties' collective bargaining agreement. In this case, the plain language of the collective bargaining agreement stipulates that the union's failure to adhere to the time limit provisions constitutes forfeiture of the right to arbitrate the grievance decisions. The parties simply did not agree to submit disputes surrounding timeliness to an arbitrator. Based on the express terms of the collective bargaining agreement, the parties contractually agreed that failure to pursue a timely appeal constitutes a substantive bar to proceeding to arbitration. Based upon the plain language in the parties' agreement, the district court in the instant case correctly found that the parties never contemplated presenting to an arbitrator an untimely request for arbitration.

The majority's holding in this case is anything but narrow and is not limited in any principled way. Because the holding could be logically extended to any threshold or procedural issue, the majority's holding presents the threat of sweeping within its ambit matters that the parties intended to reserve for the court. More specifically, the majority's holding is fundamentally flawed because it opens the door to having nonarbitrable disputes improperly resolved by an arbitrator from the inception of an arbitration demand. This holding would extend Congress' policy in favor of arbitration where the parties have agreed to arbitrate beyond anything Congress reasonably intended, and would impose an obligation on parties to arbitrate disputes where the parties have not agreed to arbitrate. *See, e.g*, *Waffle House*, 534 U.S. at 293-94; *see also Volt*, 489 U.S. at 478. Because the majority installs arbitration as the inevitable and unavoidable first step in resolving disputes, even when arbitration is not contractually required, the majority violates federal policy which prohibits the imposition of compulsory arbitration upon parties except when they are bound by an arbitration agreement. *Cf. Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. NLRB*, 501 U.S. 190, 209 (1991) (holding that "we refuse to apply th[e] presumption [of arbitrability] wholesale in the context of an expired bargaining agreement, for to do so would make limitless the contractual obligation to arbitrate"). The majority's conclusion will undoubtedly encompass situations and cases where the issue of arbitrability should properly be decided by the district court rather than an arbitrator based on the parties' express intent and the plain language in the parties' arbitration agreement.

In other words, the majority opinion as written, and certainly by implication, will compel arbitration, including the decision whether a matter is arbitrable, even where the parties have not contractually agreed to resolve a dispute in an arbitral forum. Furthermore, under the majority's approach, since arbitrators will be asked to resolve threshold and procedural issues, arbitrators will be able to define and determine the scope of their own jurisdiction even with respect to matters that are not arbitrable. The majority would require matters of contract interpretation intended for the court to be reduced to substantive law governing the arbitrator, which he can ignore or not as he pleases, subject only to this Court's review of the arbitrator's final award. This approach is fundamentally at odds with Supreme Court precedent, *First Options*, 514 U.S. at 945 (recognizing that parties "often might not focus . . . upon the significance of having arbitrators decide the scope of their own powers"), and is particularly problematic because once a matter is submitted to an arbitrator, the standard of review is highly deferential, *Mich. Family Res., Inc. v. Serv. Employees Int'l Union*, 475 F.3d 746, 748 (6th Cir. 2007) (en banc) (establishing that the review of an arbitration decision is so extremely deferential, at least in the Sixth Circuit, that such review is virtually meaningless and tantamount to rubber-stamping the arbitrator's decision).

As a result of the majority opinion herein, the precarious future of labor arbitration cases in this Circuit is predictable: because of the holding in this case, district courts will send matters to the arbitrator from the onset; the arbitrator will interpret the collective bargaining agreement and render a decision; the decision may be appealed by a party; but the courts, instead of performing an independent review of the arbitrator's decision even where circumstances warrant, will affirm the arbitrator's decision. Essentially, there will be no independent or meaningful review of an arbitrator's jurisdictional determination. This is particularly problematical to the extent that courts have an incentive to minimize judicial review of arbitration decisions in order to conserve judicial resources and avoid delaying or complicating a case, and that this same motivation exists to close the courthouse doors to litigants and deprive them of their rights.

This case creates a thinly-veiled conduit to divert matters to arbitration notwithstanding that the parties have never expressed an intent to arbitrate. This outcome has a strong potential to substantially erode—and ultimately eliminate—appropriate judicial adjudication in arbitration cases. The majority essentially deprives parties of their right to have their disputes settled by a court, even though the parties have not waived that right. This is simply not what the Supreme Court envisioned in *Howsam* or *Wiley*; the Supreme Court clearly did not intend for the courthouse doors to be

slammed shut, in such a wholesale fashion, with respect to determining arbitrability. Indeed, this Court cannot create artificial jurisdictional limitations. *Cf. Jones v. Bock*, 127 S. Ct. 910, 919 (2007) (bluntly reminding this Court that we cannot depart from usual practice on the basis of "perceived policy concerns").

The issue of arbitrability simply cannot be insulated from judicial review where not justified by the law, the particular circumstances of the dispute, or the parties' arbitration agreement. Again, the outcome of this case broadly insulates arbitration decisions from judicial adjudication even in the absence of any appropriate legal justification. This outcome is particularly troublesome because this Court has so sweepingly overruled *Moog* that parties' express intent with respect to arbitration will often be rendered meaningless. Under the majority's formulation, arbitration will be ordered so long as a party to the dispute can point to the existence of an arbitration agreement and demand arbitration even though the dispute at issue is not remotely covered by the express terms of the arbitration provision in the parties' contract. Furthermore, under the majority's approach, the arbitrator himself gets to decide the issue of arbitrability as a threshold matter—with little or no likelihood of judicial review or correction – even when the parties' dispute is not one which is even arguably covered by the arbitration agreement.

## CONCLUSION

The parties in this case did not agree to submit a dispute concerning timeliness to an arbitrator. The majority improperly compels the Defendant company to arbitrate where nothing in the collective bargaining agreement suggests that the parties intended an arbitrator to determine the arbitrability of the underlying dispute. For the foregoing reasons, I would affirm the district court's decision. I therefore respectfully dissent.