NOT RECOMMENDED FOR PUBLICATION
File Name: 16a0104n.06

No. 14-4294

**FILED**
Feb 19, 2016
DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| LOCAL 18 INTERNATIONAL UNION OF OPERATING ENGINEERS, | ) ) ) | |
| Plaintiff-Appellant, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| v. | ) ) ) | |
| OHIO CONTRACTORS ASSOCIATION, | ) ) | |
| Defendant-Appellee. | ) ) | |

BEFORE:   BATCHELDER, MOORE, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge.   The International Union of Operating Engineers, Local 18 (Local 18), a labor union, filed suit to compel an association that represents employers, the Ohio Contractors Association (OCA), to arbitrate a dispute concerning certain Hydro-Excavator equipment.  Local 18 and the OCA are parties to a collective bargaining agreement, the Highway Heavy Agreement, which governs the relationship between the OCA, Local 18, and operating engineers in the heavy highway and utility construction industry.  Local 18 alleges that the OCA breached the agreement in refusing to arbitrate a dispute about the classification of Hydro-Excavators and the wage rates of Local 18 members who operate that equipment.  The district court granted the OCA's motion to dismiss, reasoning that the OCA did not agree to submit this type of dispute to arbitration.  Judgment should not have been entered for the OCA, however, because the facts alleged in Local 18's complaint do not compel the conclusion that this dispute

is not arbitrable. To the contrary, because an arbitration provision separate from the one that the district court analyzed presumptively channels this type of dispute to arbitration, Local 18 may be entitled to a judgment in its favor absent some reason not briefed here.

For more than forty years, Local 18 and the OCA have negotiated a series of collective bargaining agreements. The current agreement (the CBA) was executed on May 8, 2013. The CBA establishes terms of employment for Local 18 members, and Exhibit A of the CBA establishes wage rates for Local 18 members employed to operate certain equipment. During negotiations for the CBA, Local 18 and the OCA placed equipment into one of five categories in Exhibit A. Although the Hydro-Excavator equipment is not listed in Exhibit A, during the twelve months before the filing of the complaint, OCA contractors employed Local 18 members to operate the equipment. The OCA asserted in its answer to the complaint that non-union members also operated the equipment during that time.

In January of 2014, Local 18 requested that the OCA meet to negotiate a classification and wage rate for the Hydro-Excavator equipment. Local 18 made this request pursuant to Paragraph 30 of the CBA, which states in relevant part that:

> If equipment within the jurisdiction of the International Union of Operating Engineers is used by an Employer and there is not an appropriate classification listed under the wage schedule [in Exhibit A], either party may request the other party to meet to negotiate a new classification and rate of pay . . . . If no agreement can be reached on a new rate, the dispute will be referred immediately to Step 4 of the Grievance Procedure outlined in Article XV, Paragraph 108[, which provides for final and binding arbitration of certain disputes.]

The CBA's Index lists Paragraph 30 as the "New Equipment Rate" subsection of Article IV. Article IV, in turn, is entitled "Wage Rates." Paragraph 29, which is the first paragraph in Article IV, also provides that "[t]he purpose of th[e] Agreement is to establish wage rates and

conditions to apply for all work as defined herein and for operation of all equipment which comes under the jurisdiction of the International Union of Operating Engineers, Local 18."

In response to Local 18's request, the OCA informed Local 18 that it would not negotiate a classification and wage rate for Hydro-Excavators because Local 18's request was improper. The request was improper, according to the OCA's memorandum in support of dismissal, because the dispute was a "jurisdictional dispute" not subject to Paragraph 30 and because Local 18 was attempting to compel arbitration through Paragraph 30 after unsuccessfully attempting to include the Hydro-Excavator in the current CBA.[1] Local 18 then advised the OCA that it was submitting the dispute to Step 4 of the grievance procedure in Paragraph 108, which is incorporated into Paragraph 30 and provides for binding arbitration. In May 2014, the OCA reaffirmed that it would not arbitrate the dispute and that Local 18's attempt to do so was improper.

Local 18 next filed a petition in state court to compel arbitration pursuant to Paragraph 30. After the OCA removed the case to federal court, Local 18 amended its complaint to allege that the OCA's failure to arbitrate the dispute was a breach of contract under § 301 of the Labor Management Relations Act (LMRA). Section 301 provides that "[s]uits for violation of contracts between an employer and a labor organization . . . may be brought in any district court of the United States having jurisdiction of the parties." LMRA § 301, 29 U.S.C. § 185(a); *see also Int'l Bhd. of Elec. Workers, Local 71 v. Trafftech, Inc.*, 461 F.3d 690, 693 (6th Cir. 2006) (citation omitted) (noting that § 301 empowers courts to enforce agreements to arbitrate).

The district court dismissed Local 18's complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. The court framed the issue as "whether the arbitration provision in the

---

[1] As discussed in Part I below, the asserted fact concerning unsuccessful negotiations was not pled in Local 18's complaint and therefore cannot be considered in a Fed. R. Civ. P. 12(b)(6) ruling.

[Highway Heavy] Agreement"—which the court identified as Paragraph 30—"applies to this particular controversy." First, the court noted that Paragraph 30 requires that the equipment at issue must be "within the jurisdiction" of Local 18. To resolve this question, the court looked to Paragraph 4 of the CBA, which the Index labels "Jurisdiction, Work." Paragraph 4 provides that:

> The Employer will employ Operating Engineers for the erection, operation, assembly and disassembly, and maintenance and repair of the following construction equipment, regardless of motive power: Air Compressors, Backfillers, Batch Plants, Boilers, Cableways, Connection Machines, Derricks, Finishing Machines, Truck-Crawler and Locomotive Cranes, Concrete Mixing Plants, Shovels, Hoes, Keystone Graders, Paving Mixers, Piledriving Machines, Tractors, Le Tourneau and other types of Scoops, End Loaders and all like equipment within the jurisdiction assigned to the Union by the American Federation of Labor.

The court then observed that "Exhibit A does not include Hydro-Excavators" and that "[n]either the Hydro-Excavator nor any type of excavator is listed in Paragraph 4." The court concluded its analysis by reasoning that:

> It is undisputed that OCA members have employed both Union and non-union members to operate Hydro-Excavators in the past without paying a penalty. It is also undisputed that the Union was unsuccessful in getting the OCA to agree to add Hydro-Excavators to the list of equipment described in Exhibit A or Paragraph 4 of the current Agreement. These undisputed facts alone show that neither party, today or in the past, considered Hydro-Excavators to be "within the jurisdiction of the Union."

Because Hydro-Excavators are not within Local 18's jurisdiction, according to the court, the OCA "did not agree to . . . submit" this dispute to arbitration. As a result, Local 18's breach of contract claim failed. Local 18 appeals.

Local 18 argues that the district court erred in determining that the dispute is not arbitrable and in evaluating the merits to determine arbitrability. Even if the question of jurisdiction must be decided by a court, Local 18 contends that the district court erred in relying

on matters outside the complaint to determine whether Hydro-Excavators are within Local 18's jurisdiction. With respect to the arbitrability of the dispute, Local 18 argues that Paragraph 30, the New Equipment Rate clause, sends the dispute to arbitration. Local 18 also argues that the general grievance provision, Paragraph 108, applies to the dispute. Paragraph 108 outlines steps that a party must take "[s]hould a dispute arise among any of the parties (Employee, Employer, Association and/or Union) to this Agreement as to its meaning, intent or the application of its terms." Relevant portions of Paragraph 108 are as follows:

> **Step 1.** The aggrieved employee shall first take up his/her grievance orally with the Employer's Supervisor or Representative. He/she may, if he/she so desires, have his/her Steward appear with him/her. The grievance shall be orally brought to the Employer's attention within three (3) working days of the occurrence, or discovery of the grievance, but in no event will the grievance be honored by management later than fifteen (15) days past the incident giving rise to the complaint . . . .
> **Step 2.** In the event the grievance is not settled, the employee then shall put his/her grievance in writing within three (3) working days after STEP 1 meeting, dated and signed along with the Contract Article affected and submit the grievance to the District Business Representative and he/she and the Business Representative shall meet with the Employer's Representative and attempt to settle the matter. If no settlement can be reached within ten (10) working days from the date of the written grievance, then
> **Step 2a.** The grievance may be considered by a designated representative of the Union and the Labor Relations Director of the Ohio Contractors Association, who shall have the authority to mutually agree upon a final and binding settlement of the grievance. If Step 2a. is not utilized, or if no settlement can be reached in Step 2a. within five (5) days from the date the grievance is referred, then:
> **Step 3.** The grievance may be referred to the State Joint Committee consisting of six (6) members. . . . If no settlement is reached at this STEP within fifteen (15) working days from the date the grievance is referred, then
> **Step 4.** The grievance shall then be referred to an Arbitrator selected by the Committee referred to in STEP 3. If the parties cannot agree on an Arbitrator within forty-eight (48) hours after the parties agree to submit the matter to arbitration, the parties shall jointly request the Federal Mediation and Conciliation Service to furnish a list of Arbitrators from which the Arbitrator shall be selected by the alternate striking of names.

* * *

Because the district court relied in part on matters extrinsic to the complaint to determine whether Hydro-Excavators are within Local 18's jurisdiction and because the facts alleged in the complaint do not prove that Hydro-Excavators are outside Local 18's jurisdiction, Local 18's breach of contract claim should not have been dismissed on a Rule 12(b)(6) motion. Nor should the question of jurisdiction be resolved by a court. The parties' dispute concerning the meaning and application of the phrase "within the jurisdiction" in Paragraph 30 triggers Paragraph 108's broadly-worded arbitration clause, which means that the question of jurisdiction must presumptively be determined by an arbitrator.

## I.

Our de novo review of the district court's Rule 12(b)(6) ruling shows that the facts alleged in the complaint do not support dismissal at this stage. *See Chambers v. HSBC Bank USA, N.A.*, 796 F.3d 560, 567 (6th Cir. 2015) (citation omitted) (stating standard of review). Paragraph 30 provides that either party may request to negotiate a classification and rate of pay for equipment if the equipment is within Local 18's jurisdiction, the equipment is used by an employer, and Exhibit A does not contain an appropriate classification. The district court dismissed Local 18's complaint on the basis that Hydro-Excavators are not within Local 18's jurisdiction. We assume, for this part of the opinion only, that the question of jurisdiction was for the court to decide.

A complaint may be dismissed on a Rule 12(b)(6) motion only if it "contain[s] [in]sufficient factual matter, accepted as true, to 'state a claim [for] relief that is plausible on its face.'" *Garcia v. Fed. Nat'l Mortg. Ass'n*, 782 F.3d 736, 739 (6th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Yet Local 18 alleges factual matter in its complaint which, if true, would require arbitration of this dispute. Local 18's complaint asserts

that "Hydro-Excavator equipment, technology and machinery is equipment within the jurisdiction of the International Union of Operating Engineers." A Hydro-Excavator would presumably fall within Local 18's jurisdiction on the basis that it is like equipment listed in Paragraph 4 because that Paragraph provides that listed equipment and "all like equipment" is within the union's jurisdiction.[2] If a Hydro-Excavator is within Local 18's jurisdiction, the OCA's refusal to negotiate a classification may constitute a breach of Paragraph 30. However, the discovery and briefing that could have developed this theory did not occur below, and we cannot determine based on the complaint whether a Hydro-Excavator is like equipment such as a Le Tourneau, Scoop, or End Loader. Deciding the question of jurisdiction at this stage was premature.

None of the three asserted facts relied upon by the district court supports dismissing Local 18's complaint. The first fact, as stated by the district court, was that "[n]either the Hydro-Excavator nor any type of excavator is listed in Paragraph 4." This statement does not support the conclusion that Local 18's jurisdiction does not include Hydro-Excavators. As an initial matter, facts outside the complaint's pleadings are not properly considered in a 12(b)(6) ruling. *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 487 (6th Cir. 2009) (per curiam) (citation omitted). Because the above statement assumes that none of the listed equipment in Paragraph 4 is an "excavator" and because this assumption finds no support in the complaint, this assumption is not an appropriate consideration in a 12(b)(6) ruling. Even if this assumption were established

---

[2] At oral argument, counsel for Local 18 argued that whether equipment is within the union's jurisdiction should be determined by several factors, including Local 18's 1903 charter, decisions issued by the AFL-CIO, and the type of training provided on Hydro-Excavators. Oral Argument at 8:38, *Local 18 Int'l Union of Operating Engr's v. Ohio Contractors Ass'n*, (No. 14-4294), *available at* http://www.ca6.uscourts.gov/internet/court_audio/aud1.php. Although Local 18's complaint asserted that Hydro-Excavators are within its jurisdiction, the union had never explained before oral argument how jurisdiction is to be determined. This appeal does not require deciding whether Local 18's jurisdiction is determined solely by Paragraph 4 or also by reference to other factors. The parties' dispute about how to determine jurisdiction further supports the conclusion that this case should not have been decided on a motion to dismiss.

by the complaint, the complaint provides no way of knowing whether a Hydro-Excavator is "like" the equipment listed in Paragraph 4. As a result, that the Hydro-Excavator is not listed in Paragraph 4 should not have factored into the conclusion that the equipment is outside Local 18's jurisdiction.

The second asserted fact, that the OCA had not paid a penalty to Local 18 before the union filed the complaint, also should not count against Local 18 on a motion to dismiss. The district court stated that it was "undisputed that OCA members have employed both Union and non-union members to operate Hydro-Excavators in the past without paying a penalty." The district court reasoned that if Hydro-Excavators were within Local 18's jurisdiction, Local 18 would have insisted that businesses employing non-union members to operate Hydro-Excavators pay a penalty under Paragraph 13.[3] But as stated above, a district court cannot consider facts outside the complaint on a motion to dismiss. *Tackett*, 561 F.3d at 487 (citation omitted). Although the union's complaint does allege that the OCA employed Local 18 members to operate Hydro-Excavators in the last twelve months, it does not allege that the OCA employed non-union workers to operate Hydro-Excavators or that it did so without paying a penalty. Thus, the district court's statement was error, as neither the asserted fact that the OCA employed non-union workers nor the asserted fact that it did so without paying a penalty was properly before the district court.

The third asserted fact identified by the district court was "that the Union was unsuccessful in [the most recent negotiations in] getting the OCA to agree to add Hydro-Excavators to the list of equipment described in Exhibit A or Paragraph 4 of the current

---

[3] Paragraph 13 authorizes certain union members to collect penalties if non-union employees work with equipment within Local 18's jurisdiction. The Paragraph provides that "[i]f the Employer assigns any piece of equipment to someone other than the Operating Engineer, the Employer's penalty shall be to pay the first qualified registered applicant the applicable wages and fringe benefits from the first day of violation."

Agreement." However, this fact was not alleged in the complaint and therefore should not have been considered in the court's ruling. Indeed, the record suggests that this information was contained in the OCA's memorandum in support of the motion to dismiss, which stated that "the issue of the Hydro-Excavator was raised by the Union in the last bargaining negotiations when it requested the inclusion of a rate for the Hydro-Excavator in the CBA" and urged that by suing the OCA, "the Union is attempting to obtain what it could not obtain during [those] negotiations." Such assertions cannot be considered in a ruling on a motion to dismiss.

Disregarding matters outside the complaint, we are left with the bare fact that Hydro-Excavators are not listed in Paragraph 4. This is not sufficient to conclude as a matter of law that Hydro-Excavators are outside Local 18's jurisdiction. Because Local 18 has stated a plausible claim for relief, the complaint should not have been dismissed.

## II.

Moreover, the question of whether Hydro-Excavators are within Local 18's jurisdiction is presumptively a question for an arbitrator under Paragraph 108 of the CBA. If Paragraph 30 were the only arbitration provision in the CBA, the question of jurisdiction would be committed to the courts. In addition to Paragraph 30, however, the CBA contains a broadly-worded arbitration provision in Paragraph 108. Paragraph 108 applies to this dispute because it covers "disputes . . . as to [the CBA's] meaning, intent or the application of its terms" and the parties dispute the application of Paragraph 30's "within the jurisdiction" requirement.

It is true that the question of whether this dispute is arbitrable pursuant to Paragraph 30 can be considered a question of substantive arbitrability rather than procedural arbitrability. It is also true that "[t]he question whether the parties have submitted a particular dispute to arbitration," sometimes labeled substantive arbitrability, "is an issue for judicial determination

[u]nless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) (internal quotation marks omitted)); *see also United Steelworkers of Am. v. Saint Gobain Ceramics & Plastics, Inc.*, 505 F.3d 417, 421 (6th Cir. 2007) (en banc). (By contrast, where the issue is not one of substantive arbitrability, the strong federal policy in favor of arbitration requires that disputed questions of "procedural arbitrability" be decided by the arbitrator. *See Saint Gobain*, 505 F.3d at 420.) But here there is a clear provision that requires arbitration of whether Paragraph 30 is arbitrable: Paragraph 108.

### a. Paragraph 30's arbitration provision

First, it should be explained, Paragraph 30 by itself does not require arbitration with respect to its own arbitrability. The plain language supports this conclusion. Local 18 argues that Paragraph 30 covers disputes about the *inclusion* of new equipment in Exhibit A's classification schedule. Paragraph 30, however, provides a dispute mechanism where Local 18 and the OCA cannot agree on the new rate for equipment. Indeed, the text provides that "[i]f no agreement can be reached on a *new rate*, the dispute will be referred immediately to Step 4 of the Grievance Procedure outlined in . . . Paragraph 108." The quoted language indicates that Paragraph 30 submits disagreements regarding a new rate of pay to arbitration, not disagreements over whether equipment is within Local 18's jurisdiction.

Moreover, the jurisdiction question in Paragraph 30 is not analogous to the type of procedural questions that courts have determined are matters for an arbitrator. Jurisdiction instead relates to the scope of Paragraph 30's arbitration provision, which is a question of substantive arbitrability. Three Supreme Court cases support this conclusion by illustrating the distinction between matters of procedural and substantive arbitrability. In *Howsam*, the Court

determined that whether a dispute was time-barred under an arbitration provision was a procedural matter for an arbitrator. 537 U.S. at 85–86; *see also Armco Emps. Indep. Fed'n v. AK Steel Corp.*, 252 F.3d 854, 861 (6th Cir. 2001) (same). The *Howsam* Court noted that procedural matters similar to time limits include "notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate." *Howsam*, 537 U.S. at 85 (quoting Revised Unif. Arbitration Act § 6, cmt. 2, 7 U.L.A. 13 (2000) (internal quotation marks omitted)). Similarly, the Court in *John Wiley & Sons, Inc. v. Livingston* held that whether a union had satisfied the first two steps of a grievance procedure was for an arbitrator to decide. 376 U.S. 543, 556, 559 (1964). Neither the list given by the *Howsam* Court nor the issue addressed by *John Wiley & Sons* is analogous to the extent of a union's jurisdiction; the jurisdiction requirement, unlike the issues in those cases, does not relate to the procedure of a grievance. Indeed, unlike defenses related to time limits, notice, laches, or estoppel, the dispute over jurisdiction attacks the premise that the parties agreed to arbitrate this type of dispute. Because Paragraph 30's jurisdiction requirement relates to the scope of an arbitration provision, the issue here resembles the question of substantive arbitrability in *AT&T Technologies*, which was whether a layoff controversy fell within the scope of an arbitration clause. 475 U.S. at 645–46, 651–52. Paragraph 30's arbitration mechanism, then, does not send this case to arbitration.

### b. Paragraph 108's arbitration provision

Even so, the parties' dispute as to the meaning of a term of the CBA—whether Hydro-Excavators are "within the jurisdiction" of the union—is substantively arbitrable under Paragraph 108. This conclusion is driven by the language of that paragraph and bolstered by the strong presumption in favor of the arbitrability of labor disputes.

The first sentence in Paragraph 108 states that "[s]hould a dispute arise among any of the parties, (Employee, Employer, Association and/or Union) to this Agreement as to its meaning, intent or the application of its terms, the dispute will be settled in accordance with the following grievance procedure." Three aspects of that sentence—the who, the what, and the how—prove that this case is arbitrable. First, the sentence indicates that Paragraph 108 applies to disputes among *any* of the potentially interested parties, including disputes between the OCA and Local 18, because the sentence mentions both organizations and uses the partially disjunctive phrase "and/or." Reading Paragraph 108 to apply only to disputes between a union employee and an employer or the OCA would make superfluous the word "Union." Second, the sentence indicates that Paragraph 108's arbitration procedure applies to disputes "as to [the CBA's] meaning, intent or the application of its terms." No exceptions limit this broad coverage. In this case, the parties disagree about the meaning or application of a term of the CBA, Paragraph 30's "within the jurisdiction" requirement. Among other things, the parties dispute whether a Hydro-Excavator is covered by that term and how Local 18's jurisdiction is to be determined. Third, the last part of the quoted sentence indicates that Steps 1, 2, 2a, 3, and 4 are only a procedure that applies to streamline most disputes. These steps do not define what a dispute is, and therefore do not limit the extent to which Paragraph 108's arbitration mechanism covers disputes.

Also supporting the conclusion that Paragraph 108 applies to this dispute is the presumption in favor of arbitrability. That presumption applies in cases, like this one, that involve "deciding the arbitrability of a dispute." *United Steelworkers of Am. v. Cooper Tire & Rubber Co.*, 474 F.3d 271, 277 (6th Cir. 2007) (citing *Gen. Drivers, Salesmen & Warehousemen's Local Union No. 984 v. Malone & Hyde, Inc.*, 23 F.3d 1039, 1043 (6th Cir. 1994)). Moreover, applying the presumption here accords with one of the policies underlying

the presumption—that arbitrators have more experience than courts in resolving labor disputes. *See id.* at 278. That policy is especially relevant in this case, which requires a decision-maker to make highly technical decisions about how similar a Hydro-Excavator is to equipment listed in Paragraph 4. Accordingly, the language of Paragraph 108 and the presumption in favor of arbitrability support the arbitrability of a dispute about a term in Paragraph 30 or in any other paragraph of the CBA.[4]

The OCA counters that this conclusion cannot be reconciled with the procedures listed in Paragraph 108, noting that Steps 1 and 2 in particular contemplate an "aggrieved employee," with or without a "Steward," first taking a grievance orally to the employer and then submitting the grievance in writing to a "District Business Representative." The OCA asserts that these steps indicate that Paragraph 108 is limited to employee grievances. This is not the fairest reading of Paragraph 108 as a whole. Terms in a CBA must be given their ordinary meaning and must be read in the context of the entire agreement. *See Mastro Plastics Corp. v. NLRB*, 350 U.S. 270, 279 (1956); *Dobbs, Inc. v. Local No. 614, Int'l Bhd. of Teamsters*, 813 F.2d 85, 88 (6th Cir. 1987) (citing *Detroit Coil Co. v. Int'l Ass'n of Machinists & Aerospace Workers, Lodge No. 82*, 594 F.2d 575, 580 (6th Cir. 1979)). It is true that the structure and language of Steps 1 and 2, standing alone, arguably support the argument that Paragraph 108 applies only to employee grievances. As noted earlier, however, this interpretation avoids the broad language at the beginning of Paragraph 108, which provides that the dispute resolution mechanism applies to any dispute about any of the CBA's terms between any of the listed organizations or individuals. To the extent that there is any conflict between the first sentence in the paragraph and the steps of the procedure, the first sentence evidences a more explicit agreement regarding the broad scope

---

[4] Holding that this case is arbitrable under Paragraph 108 does not require characterizing Paragraph 30 as a "wage reopener clause." The holding in this case rests solely on the fact that the parties dispute the application of one of the terms of the CBA.

of Paragraph 108's arbitration provision than any implicit agreement that can be derived from the steps of the procedure.

Some disputes regarding the meaning of "jurisdiction" under the CBA could not reasonably require a grievance by an individual employee. For instance, in this case there is no practical way for an individual Local 18 member to complain of a violation of his individual CBA rights where the alleged violation of the CBA instead constitutes a violation of Local 18's general contractual right that the OCA subject a particular piece of equipment to a rate determination. We could read Paragraph 108 to say that if a dispute like that cannot practically be brought by an employee grievance, the dispute is just not arbitrable. A fairer reading, however, is that the first part of Paragraph 108 means what it says about referring CBA interpretation differences to arbitration, and that the Paragraph 108 steps that refer to individual employee grievances apply only when they are practically capable of application. This interpretation is reasonable and moreover is supported by the presumption of arbitrability.

The OCA also argues that reading Paragraph 108 to cover this dispute provides an end-run around the jurisdiction requirement in Paragraph 30, because Local 18 could now arbitrate any dispute involving new equipment. This is not an end-run around the jurisdiction requirement, however, but a way of applying it. Our holding is based solely on the words in Paragraph 108, words that the OCA agreed to when negotiating the latest round of the CBA. The OCA also asserts that Hydro-Excavators are not "new" because they have been in use for twelve months, and that Local 18 therefore cannot force the OCA to classify this equipment. The same analysis concerning Paragraph 30's jurisdiction requirement applies to any newness requirement that Paragraph 30 might contain. Because the parties dispute whether the Hydro-Excavator is new equipment, this dispute also is arbitrable under Paragraph 108.

Nor does Paragraph 109 of the CBA preclude the conclusion that Paragraph 108 channels this dispute to arbitration. Paragraph 109 provides in part that "[t]he Arbitrator shall have no power to add to, subtract from, or modify any of the terms and provision of this [CBA]." The OCA argues that holding this dispute arbitrable would allow the arbitrator "to add to" the CBA if the arbitrator concludes that Hydro-Excavators should be listed in Exhibit A, which is incorporated into the CBA. But the arbitrator would not be adding to the parties' agreement by deciding an issue that the parties have already agreed should be decided by an arbitrator. Indeed, the arbitration provisions necessarily delegate some degree of decision-making authority to an arbitrator to resolve disputes about the CBA. A contrary conclusion would prevent arbitrators from deciding any Paragraph 30 disputes about a rate of pay because in each instance, the arbitrator's decision could be characterized as modifying the CBA.

Finally, Paragraph 110 of the CBA likewise does not prevent arbitration of this dispute. That Paragraph provides that "in the event of a jurisdictional dispute with any other union, or unions, the dispute shall be submitted to the Impartial Jurisdictional Disputes Board for settlement." Because the dispute over the Hydro-Excavator is not a "jurisdictional dispute" and because the complaint does not establish that Paragraph 110 has taken effect, that paragraph does not remove this dispute from Paragraph 108's arbitration procedure.

The OCA alleges that the present case is a jurisdictional dispute because by forcing the OCA or an arbitrator to establish a wage rate for Hydro-Excavators, Local 18 is essentially attempting to prevent non-Local 18 employees from operating the equipment. This theory is supported by Paragraph 7 of the CBA, which states that Local 18 "is the sole representative of all employees in the classifications of all work under [Local 18's] jurisdiction covered by this Agreement." The first problem with this theory is that the plain language of Paragraph 110

indicates that it applies only to disputes involving Local 18 and another union. Although other unions might have an interest in the outcome of this dispute because their members could perform work for the OCA if the dispute terminates in the OCA's favor, no other union is a party to this dispute. Nor does the complaint allege that other unions are claiming Hydro-Excavator work.

Moreover, the complaint does not show that the Impartial Jurisdictional Disputes Board has been re-established. This is fatal to the OCA's Paragraph 110 argument because Paragraph 111 states that Paragraph 110 "will go into effect when the Impartial Jurisdictional Disputes Board re-establishes." Because this prerequisite to Paragraph 110 taking effect has not been met, this is an independent reason for concluding that the paragraph does not remove this dispute from Paragraph 108's arbitration clause.

### III.

For the foregoing reasons, the judgment of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion.